| | |
|---|---|
| 1 | PAUL A. HILDING, ESQ.<br>State Bar No. 110656 |
| 2 | hilding@hildinglaw.com<br>JAMES H. PYLE, ESQ. |
| 3 | State Bar No. 224121<br>jpyle@hildinglaw.com |
| 4 | HILDING LAW FIRM<br>501 W. Broadway, Suite 1760 |
| 5 | San Diego, California 92101<br>Tel:   (619) 233-4200 |
| 6 | Fax:  (619) 233-4211 |
| 7 | SUZANNE BURKE SPENCER, ESQ.<br>State Bar No. 188597 |
| 8 | sspencer@sallspencer.com<br>SALL SPENCER CALLAS & KRUEGER APC |
| 9 | 32351 Coast Highway<br>Laguna Beach, California 92651 |
| 10 | Tel:   (949) 499-2942<br>Fax:  (949) 499-7403 |
| 11 | |
| 12 | Attorneys for Plaintiff SIGMA<br>FINANCIAL CORPORATION |

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| SIGMA FINANCIAL CORPORATION, a Michigan corporation,<br><br>           Plaintiffs,<br><br>v.<br><br>GOTHAM INSURANCE COMPANY, a New York corporation; BROWN & BROWN PROGRAM INSURANCE SERVICES, INC., DBA CALSURANCE ASSOCIATES, a California Corporation; CADENCE INSURANCE BROKERS, INC., a Tennessee corporation,<br><br>           Defendants. | Case No.  8:15-cv-1531<br><br>**COMPLAINT FOR:**<br><br>**1.  BREACH OF CONTRACT (DUTY TO DEFEND)**<br><br>**2.  BREACH OF CONTRACT (DUTY TO INDEMNIFY)**<br><br>**3.  DECLARATORY RELIEF (DUTY TO DEFEND AND INDEMNIFY)**<br><br>**4.  DECLARATORY RELIEF (REFORMATION)**<br><br>**5.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**6.  PROFESSIONAL NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

complaint                                          1
**COMPLAINT**

Plaintiff SIGMA FINANCIAL CORPORATION ("Sigma") in its complaint against Defendants GOTHAM INSURANCE COMPANY ("Gotham"), BROWN & BROWN PROGRAM INSURANCE SERVICES, INC., DBA CALSURANCE ASSOCIATES ("CalSurance"), and CADENCE INSURANCE BROKERS, INC. ("Cadence"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship between Plaintiff and all Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. This Court has personal jurisdiction over Defendants inasmuch as Defendants, at all times relevant, repeatedly transacted insurance business in the State of California and within the geographical jurisdiction of the United States District Court for the Central District of California, Southern Division.

3. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims at issue in this action occurred in this District.

4. In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(a)(3) because Defendants are subject to personal jurisdiction in this District.

## NATURE OF ACTION

5. This is an insurance coverage and professional negligence action arising out of Gotham's failure and refusal to defend and indemnify Sigma with respect to a number of underlying arbitrations before the Financial Industry Regulatory Authority ("FINRA").

## PARTIES

6. Plaintiff Sigma is a Michigan corporation, with its principal place of business located in Ann Arbor, Michigan.

7. Plaintiff is informed and believes and thereon alleges that Defendant Gotham is a New York corporation, with its principal place of business located in Morristown, New Jersey.

8. Plaintiff is informed and believes and thereon alleges that Defendant CalSurance is a California corporation, with its principal place of business located in Orange, California.

9. Plaintiff is informed and believes and thereon alleges that at all times relevant, CalSurance served as an insurance broker representing Sigma with regard to procuring the insurance detailed below.

10. Plaintiff is informed and believes and thereon alleges that at all times relevant, Defendant Cadence is a Tennessee corporation, with its principal place of business located in Middleton, Wisconsin.

11. Plaintiff is informed and believes and thereon alleges that, at the time of the insurance transactions described below, Cadence served as a managing general agent of Gotham.

12. Plaintiff is informed and believes, and thereon alleges that, at the time of the insurance transactions described below, Cadence had full authority to bind Gotham with respect to said transactions.

13. Plaintiff is informed and believes and thereon alleges that, at the time of the insurance transactions described below, Cadence also served as a wholesale broker and agent of Sigma in procuring the insurance detailed below.

14. Plaintiff is informed and believes and thereon alleges that, at all times relevant, Cadence was owned in whole or in part by CalSurance.

## FACTUAL BACKGROUND

**A. The Gotham Excess Policy**

15. In or about June 2012, Sigma requested that its agent CalSurance purchase an excess liability insurance policy to provide additional limits of

coverage above the limits contained in its primary liability insurance policy issued by Arch Specialty Insurance Company ("the Arch Policy").

16. The then-existing primary policy issued by Arch was to expire on July 20, 2012, and in June 2012 CalSurance was in the process of renewing that coverage for another year.

17. Upon renewal, the Arch Policy provided general limits of coverage of $2 million per claim, and $10 million in the aggregate.

18. Upon renewal, the Arch Policy also contained an endorsement which provided limits of coverage for "Alternative investments," as defined therein, of $1 million per claim, and $5 million in the aggregate ("the AI Aggregate Limits").

19. A true and correct copy of the Arch Policy for the period July 20, 2012 through July 20, 2013 is attached to this complaint as Exhibit 1.

20. On or about June 21, 2012, Mr. Steve Knowles of CalSurance sent an email to Mr. Michael McCluskey of Cadence informing Mr. McCluskey that Sigma was seeking "$5 MM Excess to fit over the aggregate on the $1MM/$5MM alternative investments and $2MM/$100MM [sic] general policy."

21. A "Binder of Insurance" issued by Arch ("the Arch Binder") was attached to the email.

22. On page 2, in bold faced print, the Arch Binder noted that the alternative investments coverage was "subject to a sub-limit of $1M/$5M."

23. A true and correct copy of Mr. Knowles' June 21, 2012 email, with the Arch Binder, is attached hereto as Exhibit 2.

24. Plaintiff is informed and believes and thereon alleges that Mr. McCluskey received the June 21, 2012 email and Arch Binder on or about that date.

25. Plaintiff is informed and believes and thereon alleges that, on or about June 27, 2012, Ms. Megan Belter of Cadence sent an email to Catherine Jones of Gotham, enclosing various application materials from Sigma, and noting

1 that Sigma was "seeking a $5MM excess to fit over the aggregate on the
2 $1MM/$5MM alternative investments and $2MM/$10MM general policy."

3     26.    Belter attached a copy of the Arch Binder to the email.

4     27.    A true and correct copy of Ms. Belter's June 27, 2012 email is
5 attached hereto as Exhibit 3.

6     28.    Plaintiff is informed and believes and thereon alleges that Ms. Jones
7 received the June 27, 2012 email and Arch Binder on or about that date.

8     29.    Plaintiff is informed and believes and thereon alleges that Ms. Jones
9 was employed as an underwriter for Gotham on or about June 27, 2012.

10     30.    On or about July 18, 2012, Cadence issued a binder of insurance for
11 an excess policy to be issued by Gotham ("the Gotham Binder").

12     31.    A true and correct copy of the Gotham Binder is attached hereto as
13 Exhibit 4.

14     32.    Plaintiff is informed and believes and thereon alleges that Cadence
15 was authorized by Gotham to issue the Gotham Binder.

16     33.    Plaintiff is informed and believes and thereon alleges that, in
17 July 2012, Cadence was a managing general agent for Gotham.

18     34.    The Gotham Binder does not refer to the $1 million/$5 million
19 alternative limits of coverage in the Arch Policy.

20     35.    Plaintiff is informed and believes and thereon alleges that Cadence
21 attempted to remedy the Gotham Binder's failure to specifically reference the $1
22 million/$5 million alternative limits of coverage by adding the following
23 language: "These are additional limits only after complete depletion of any
24 primary aggregate limit as described in [the Arch Policy]."

25     36.    Plaintiff is informed and believes and thereon alleges that Gotham
26 received a copy of the Gotham Binder on or about July 18, 2012.

27     37.    Plaintiff is informed and believes and thereon alleges that CalSurance
28 received a copy of the Gotham Binder on or about July 18, 2012.

38. Gotham issued to Sigma the Gotham Policy on or about September 24, 2012, for the policy period of July 20, 2012 through July 20, 2013.

39. A true and correct copy of the Gotham Policy is attached hereto as Exhibit 5.

40. Plaintiff is informed and believes and thereon alleges that CalSurance received a copy of the Gotham Policy from Gotham and/or Cadence on or about September 24, 2012.

41. Plaintiff is informed and believes and thereon alleges that Mr. Knowles reviewed the policy to determine whether its terms were consistent with the Gotham Binder.

42. By email dated September 24, 2012, Mr. Knowles advised Sigma that he would review the Gotham Policy before forwarding it to Sigma.

43. A true and correct copy of Mr. Knowles email of September 24, 2012 is attached hereto as Exhibit 6.

44. After completing his review of the Gotham Policy, Mr. Knowles emailed a copy of the Gotham Policy to Sigma on September 24, 2012 at approximately 5:24 p.m. Central Time.

45. A true and correct copy of Mr. Knowles subsequent email of September 24, 2012 is attached hereto as Exhibit 7.

**B.  The Underlying Claims**

46. During the Gotham Policy period, a total of 23 claims were filed against Sigma.

47. All of these claims were brought by clients of Sigma.

48. All of these claims were arbitrations, filed with FINRA (the "FINRA Claims").

49. Of the FINRA Claims, a number were filed before Sigma received a copy of the Gotham Policy, including a claim entitled *EJJY Corporation v. Sigma Financial Corp.*, FINRA Arbitration No. 12-02635 ("the EJJY Claim").

50. The EJJY Claim is dated July 17, 2012, but was not stamped "received" by FINRA until August 15, 2012.

51. A true and correct copy of the EJJY Claim is attached hereto as Exhibit 8.

**C.  The Exhaustion of Primary Coverage and Tender to Gotham**

52. All of the FINRA Claims were tendered to Arch on Sigma's behalf.

53. Arch defended and settled a number of the FINRA Claims until it exhausted the limits of the Arch Policy.

54. In November and December 2014, Sigma informed Mr. Knowles that the Arch Policy would be exhausted "in two to three months," and requested that Mr. Knowles contact Gotham about handling the claims after exhaustion occurred.

55. Sigma is informed and believes and thereon alleges that Mr. Knowles and/or Cadence and/or Arch informed Gotham in or about November or December 2014 of the imminent exhaustion of the Arch Policy, and at that time requested that Gotham be prepared to defend and settle the remaining FINRA Claims once exhaustion occurred.

**D.  Gotham Rejects Numerous Request to Drop Down**

56. By letter dated January 7, 2015, China Ladner, an employee of Gotham's affiliate and agent Prosight Specialty Insurance, acknowledged that the adjuster for Arch, William Jackson, had recently informed her that "the Arch Policy's aggregate limit will soon be exhausted," and that Jackson contended "such exhaustion occurs after payment of $5 million" under the Arch Policy.

57. Ms. Ladner disagreed with Mr. Jackson and stated the Gotham Policy would be triggered "only if defense costs and/or indemnity exceed . . . $10 million in the aggregate for all claims."

58. A true and correct copy of Ms. Ladner's January 7, 2015 letter is attached hereto as Exhibit 9.

complaint                                      7
**COMPLAINT**

59. Plaintiff is informed and believes and thereon alleges that, at the time she wrote and transmitted the January 7, 2015 letter, Ms. Ladner had full authority to issue the letter on Gotham's behalf.

60. In response to the January 7 letter, CalSurance worked with Cadence to attempt to persuade Gotham that Mr. Jackson was correct that exhaustion of the Arch Policy would occur after Arch had paid $5 million for the FINRA Claims.

61. In particular, by email dated January 23, 2015, Mr. McCluskey of Cadence emailed Ms. Ladner and advised her that it was the parties' intention when Gotham bound coverage that "the excess limits attach over 'any' aggregate limit in the underlying policy whether that be the $5M sublimit or the $10M policy limit."

62. Mr. McCluskey further stated that the underwriter acting on Gotham's behalf, Ms. Jones, was aware of this intention.

63. Mr. McCluskey's January 23, 2015 email attached a copy of the original submission which, he contended, clearly spelled out that "we were applying for coverage over both the 10M aggregate and the $5M sublimit."

64. Mr. McCluskey's January 23, 2015 email also attached a copy of the Gotham Binder.

65. Ms. Ladner received the January 23, 2015 email and attachments on or about January 23, 2015.

66. A true and correct copy of the January 23, 2015 email, with attachments, is attached hereto as Exhibit 10.

67. Mr. McCluskey followed up by email dated February 5, 2015, requesting a response to his January 23 email.

68. A true and correct copy of Mr. McCluskey's February 5, 2015 email is attached hereto as Exhibit 11.

69. Ms. Ladner responded by email dated February 12, 2015, advising that, even after review of the underwriting file, "Gotham maintains its current position."

70. Ms. Ladner further advised that Gotham would not defend or indemnify Sigma for the remaining claims until Gotham received confirmation "that the $10 million aggregate limit has been fully exhausted."

71. A true and correct copy of Ms. Ladner's email of February 12, 2015 is attached hereto as Exhibit 12.

72. Plaintiff is informed and believes and thereon alleges that CalSurance and Knowles agree with Cadence that it was the parties' intention when the Gotham coverage was bound that "the excess limits attach over 'any' aggregate limit in the underlying policy whether that be the $5M sublimit or the $10M policy limit."

73. By email dated February 12, 2015, Mr. Knowles advised Sigma that he was "deeply disappointed and in total disagreement with Gotham's position."

74. A true and correct copy of Mr. Knowles' email of February 12, 2015 is attached hereto as Exhibit 13.

75. By email dated February 18, 2015, Mr. Knowles advised Sigma that Cadence was "escalating the issue with underwriting as he does not agree with the claims department decision."

76. A true and correct copy of Mr. Knowles' February 18, 2015 email is attached hereto as Exhibit 14.

77. Plaintiff is informed and believes and thereon alleges that, in spite of the additional efforts of Cadence, Gotham continued to maintain its position that it need only drop down after exhaustion of the Arch Policy's $10 million general aggregate limit.

78. As a result of Gotham's continued unreasonable denial of its obligation to drop down after exhaustion of the Arch Policy's $5 million AI aggregate limit, Sigma was forced to retain coverage counsel.

79. By email dated March 20, 2015 to counsel for Gotham, counsel for Sigma once again tried to persuade Gotham to re-consider and provide coverage after exhaustion of the Arch Policy's AI aggregate limit.

80. Plaintiff is informed and believes and thereon alleges that counsel representing Gotham received the March 20, 2015 email on or about that date.

81. A true and correct copy of the March 20, 2015 email is attached hereto as Exhibit 15.

82. Once again, Gotham refused to change its position that its coverage only dropped down after exhaustion of the $10 million aggregate limits.

83. By telephone conversation and email dated March 24, 2015, counsel for Gotham confirmed that Gotham had not changed position, that for this reason Gotham would not offer any settlement authority for the EJJY Claim mediation that was occurring that day, but that Gotham had no objection to Sigma settling the claim with its own funds.

84. A true and correct copy of the March 24, 2015 email, and the response of Gotham's counsel later the same day, is attached hereto as Exhibit 16.

**E.    Sigma Pays Post-Exhaustion Defense Costs and Settlements**

85. After Gotham's refusal to drop down, Sigma negotiated a settlement of the EJJY Claim using its own funds.

86. Thereafter, Sigma incurred substantial additional expense defending and settling a number of the remaining FINRA Claims.

87. As of September 1, 2015, the total additional expense amount Sigma has paid from its own funds for the defense and settlement of the FINRA Claims exceeds $1,310,000.

88. As of September 1, 2015, one of the FINRA Claims remains pending against Sigma.

89. Sigma has paid in full all retention amounts due.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Breach of Contract (Duty to Defend)

### (Against Defendant Gotham)

90. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 89 above, as if set forth at length herein.

91. Gotham agreed to provide excess insurance coverage to Sigma "in accordance with the terms, definitions, conditions, exclusions and limitations" of the "followed" Arch primary policy, except as otherwise provided in the Gotham Policy.

92. Neither the Gotham Policy nor the Arch Policy contain an integration clause, and thus Gotham's agreement to insure Sigma consists not only of the terms contained in the Gotham Policy and the Arch Policy, but also the statements and representations, both written and oral, made by Gotham's authorized agents and representatives.

93. The Arch Policy contains "duty to defend" coverage, and thus the Gotham Policy likewise contains such coverage, which is due upon exhaustion of the available primary coverage provided by the Arch Policy.

94. As set forth above, the AI Aggregate Limits of the Arch Policy were exhausted, and thus Gotham's duty to defend Sigma came due.

95. Sigma has fully performed all terms and conditions on its part to be performed, entitling it to defense coverage from Gotham.

96. However, despite repeated demand, Gotham has failed and refused, and continues to fail and refuse, to defend Sigma regarding the FINRA Claims, and thus Gotham has breached its duty to defend.

97. As a legal result of Gotham's breach of its duty to defend, Sigma has been forced to defend itself, and has suffered damages thus far in the amount of more than $607,000, plus interest, in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

### Breach of Contract (Duty to Indemnify)

### (Against Defendant Gotham)

98. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 97, as if set forth at length herein.

99. Gotham agreed to pay on Sigma's behalf "covered Loss" in accordance with the terms and conditions of the Gotham Policy, the followed Arch Policy, and the statements and representations of its authorized agents and representatives, upon exhaustion of the available primary coverage.

100. As set forth above, the AI Aggregate Limits of the Arch Policy were exhausted, and thus Gotham's duty to indemnify Sigma came due.

101. Sigma has fully performed all terms and conditions on its part to be performed, entitling it to indemnity coverage from Gotham.

102. However, despite repeated demand, Gotham has failed and refused, and continues to fail and refuse, to indemnify Sigma regarding the FINRA Claims including the EJJY Claim, and thus Gotham has breached its duty to indemnify.

103. As a legal result of Gotham's breach of its duty to indemnify, Sigma has been forced to settle the EJJY Claim and other claims on its own, and has suffered damages thus far in the amount of more than $703,000, plus interest in an amount to be proved at trial.

## THIRD CAUSE OF ACTION

### Declaratory Relief (Duty to Defend and Indemnify)

### (Against Defendant Gotham)

104. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 103, as if set forth at length herein.

105. Plaintiff purchased the Gotham Policy, in part, to provide excess coverage over the AI Aggregate Limits of the Arch Policy, with Gotham's duty to defend and duty to indemnify arising upon exhaustion of the $5 million AI Aggregate Limits.

106. As alleged above, Plaintiff has exhausted the AI Aggregate Limits of the Arch Policy and tendered numerous FINRA Claims to Gotham, but Gotham has refused to provide coverage until Plaintiff has exceeded the $10 million general limits of the Arch Policy.

107. An actual controversy has arisen and now exists between Plaintiff and Gotham relating to Gotham's coverage obligations, in that Plaintiff contends that pursuant to the terms of the Gotham Policy, which include not only the Gotham Policy form but also written and oral statements and representations made by Gotham's authorized agents and representatives, Gotham has a duty to defend and indemnify Plaintiff for the FINRA Claims upon exhaustion of the AI Aggregate Limits of the Arch Policy, and Gotham denies that contention.

108. A declaratory judgment is necessary to resolve the foregoing dispute, in that Plaintiff contends that Gotham has a duty to drop down and provide defense and indemnity coverage for the FINRA Claims, Gotham disputes this contention, and accordingly this dispute is ripe for resolution by this honorable Court.

## FOURTH CAUSE OF ACTION

### Declaratory Relief (Reformation of Insurance Contract)

### (Against Defendant Gotham)

109. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 89, as if set forth at length herein.

110. California Civil Code section 3399 states:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be

revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

111. Pursuant to the representations, course of conduct and documentation detailed above, the parties mutually agreed and understood that Gotham was to provide excess coverage to apply after exhaustion of the $5 million AI Aggregate Limits of the Arch Policy.

112. Gotham now contends that the Gotham Policy requires it to only provide defense and indemnity coverage after exhaustion of the $10 million general limits of the Arch Policy.

113. If the Gotham Policy operates as Gotham contends, it is the result of either: (1) Fraud, in that Gotham was apprised that Plaintiff was seeking "$5 MM Excess to fit over the aggregate on the $1MM/$5MM alternative investments. . ." coverage and that Gotham's coverage was to apply "after complete depletion of any primary aggregate limit. . . ." Gotham issued the Gotham Policy knowing that Sigma believed it was procuring excess coverage to provide defense and indemnity coverage after exhaustion of the $5 million AI Aggregate Limits of the Arch Policy. Gotham issued the Gotham Policy with policy language it contends does not apply until after exhaustion of the $10 million general limits of the Arch Policy, and Gotham intended to deceive Sigma into believing that it had procured the coverage it intended to purchase. Sigma reasonably relied upon Gotham's representations in purchasing the Gotham Policy and reasonably believed that it had purchased the coverage it sought and did not procure coverage from other sources to apply after the exhaustion of the $5 million AI Aggregate Limits, and Plaintiff has been damaged, in that now Gotham contends that its coverage does not apply until after exhaustion of the $10 million general limits of the Arch

Policy; or[1] (2) Mutual mistake, in that both Sigma and Gotham intended that the Gotham Policy apply after the exhaustion of the $5 million AI Aggregate Limits, but Gotham erroneously inserted language into the Gotham Policy casting doubt upon the application of the Gotham Policy after exhaustion of the $5 million AI Aggregate Limits; or (3) Mistake, in that Sigma intended to procure excess coverage from Gotham to apply after the exhaustion of the $5 million AI Aggregate Limits, Gotham knew of Sigma's intentions and knew or suspected that the language of the Gotham Policy issued might be interpreted to not provide the coverage Plaintiff intended to purchase, which, if true, would be a mistake of which Gotham knew or suspected.

114. An actual controversy has arisen and now exists between Sigma and Gotham relating to Gotham's duty to provide defense and indemnity coverage now that the $5 million AI Aggregate Limits of the Arch Policy has been exhausted by the FINRA Claims, and Sigma desires a declaration reforming the Gotham Policy to reflect the parties' true intent.

115. Plaintiff further alleges that it has been damaged, in that it has been deprived of policy benefits and is entitled to be awarded complete legal and/or equitable relief.

## FIFTH CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Against Defendant Gotham)**

116. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 108, as if set forth at length herein.

117. Plaintiff has fulfilled all obligations and conditions on its part to be performed under the terms of the Gotham Policy.

---

[1] Sigma pleads these bases for reformation in the alternative as provided for by Fed. R. Civ. P 8(d).

118. Implied in the Gotham Policy by operation of law is a covenant of good faith and fair dealing which requires the insurer to act as a fiduciary, and to consider the interests of its insured as being at least equal to its own.

119. The implied covenant of good faith and fair dealing requires, *inter alia*, that insurers: (1) conduct a fair, impartial, complete and thorough investigation of all claims; (2) review and consider all potential bases for coverage; (3) disclose to their insured all benefits or bases for coverage that might apply to the underlying action; (4) treat the interests of their insureds as equal to their own; (5) evaluate and participate meaningfully in efforts to settle lawsuits against the insureds; (6) accept reasonable settlement demands within policy limits to protect their insureds and take them out of harm's way; (7) promptly respond to communications from insureds and promptly pay amounts due and owing under the policies; and (8) fully comply with the requirements of the California Insurance Code, the Fair Claims Settlement Practices regulations, and all other requirements of California statutory and case law.

120. The implied covenant of good faith and fair dealing continues even after coverage litigation commences. *White v. Western Title Ins. Co*., 40 Cal. 3d 870, 885-886 (1985).

121. Plaintiff is informed and believes and thereon alleges that Gotham breached the implied covenant as follows: (a) By deliberately or negligently issuing the Gotham Policy with policy language that Gotham could later cite to falsely assert that it owed no coverage obligations until the $10 million general limit of the Arch Policy was exhausted; (b) By failing and refusing to re-consider and acknowledge its coverage obligations after it was reminded of the parties' true intentions regarding exhaustion of the Arch AI Aggregate Limits; (c) By unreasonably failing and refusing to pay amounts due and owing under the Gotham Policy; (d) By unreasonably failing and refusing to consider the interests of Sigma as equal to its own, and accordingly unreasonably evaluating exhaustion

with the goal of withholding policy benefits; (e) With the intent to defraud its insured, violating California's Fair Claims Settlement Practices Regulations, Title 10, § 2695.5(b) by failing to respond to communications from its insureds within fifteen (15) calendar days after receipt of communication where it was reasonably clear that a response was requested, and violating § 2695.7(b) by failing to accept or deny a claim, in whole or in part, within forty (40) calendar days after receiving proof of the claim; and (f) By unreasonably refusing to settle the EJJY Claim, exposing Plaintiff to the potential for a substantial judgment.

122.   Plaintiff is informed and believes that Gotham has breached the implied covenant of good faith and fair dealing through other wrongful conduct not yet fully ascertained, according to proof at trial.

123.   As a legal result of the foregoing wrongful conduct of Gotham, Sigma has suffered general, special, and consequential damages, plus interest and attorney's fees in an amount to be proven at trial.

124.   Gotham committed the foregoing wrongful conduct with the intent to deceive and defraud its insured at a time when it was most vulnerable and in need of the superior resources of its insurer, and therefore punitive damages are appropriate in an amount sufficient to punish and make an example of Gotham to prevent it from engaging in such deceitful conduct in the future.

## SIXTH CAUSE OF ACTION

### Professional Negligence

### (Against Defendant CalSurance and Cadence)

125.   Plaintiff realleges and incorporates by reference herein paragraphs 1 through 108, as if set forth at length herein.

126.   As professional insurance brokers acting in their capacity as Sigma's agents in procuring coverage excess to the Arch Policy, Defendants CalSurance and Cadence owed Sigma a duty to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise.

127. Defendants CalSurance and Cadence breached that duty by failing to adequately review the Gotham Policy to assure that its terms conformed to the intention of the parties, and to the terms of the Gotham Binder, thereby permitting Gotham to falsely assert that exhaustion of the Arch Policy would not occur until the $10 million Arch general aggregate limits had been exhausted, rather than the $5 million Arch AI Aggregate Limits.

128. As a proximate result of CalSurance and Cadence's negligence, Plaintiff has been injured, in that Gotham has refused to drop down and provide coverage upon exhaustion of the Arch Policy's AI aggregate limit.

129. As a result of the professional negligence of Defendants CalSurance and Cadence, Sigma has suffered damages by having to defend the FINRA Claims on its own after exhaustion of the AI Aggregate Limits of the Arch Policy and by having to settle the EJJY Claim and other claims on its own without any contribution by Gotham, suffering damages in excess of $1,310,000 to date, and will continue to suffer damages with respect to the ongoing FINRA Claims, according to proof at trial.

130. As a further result of the professional negligence of Defendants CalSurance and Cadence, Sigma has incurred and will continue to incur legal fees for coverage counsel to attempt to obtain from Gotham the policy benefits to which they are entitled, according to proof at trial.

**PRAYER**

1. For general, special, consequential and incidental damages in an amount exceeding $1,310,000, according to proof;

2. For prejudgment interest at the legal rate;

3. For reasonable attorney's fees incurred to recover policy benefits;

4. For a declaration of rights and duties with respect to the Gotham Policy;

5. For reformation of the Gotham Policy;

6. For punitive damages; and

7. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: September 23, 2015	**HILDING LAW FIRM**

By: /s/ Paul A. Hilding
Paul A. Hilding, Esq.
James H. Pyle, Esq.
Attorneys for Plaintiff
SIGMA FINANCIAL CORP.
hilding@hildinglaw.com
jpyle@hildinglaw.com

DATED: September 23, 2015	**SALL SPENCER CALLAS & KRUEGER APC**

By: /s/ Suzanne Burke Spencer
Suzanne Burke Spencer, Esq.
Attorneys for Plaintiff
SIGMA FINANCIAL CORP.
sspencer@sallspencer.com

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Respectfully submitted,

DATED: September 23, 2015  **HILDING LAW FIRM**

By: _s/ Paul A. Hilding_
Paul A. Hilding, Esq.
James H. Pyle, Esq.
Attorneys for Plaintiff
SIGMA FINANCIAL CORP.
hilding@hildinglaw.com
jpyle@hildinglaw.com

DATED: September 23, 2015  **SALL SPENCER CALLAS & KRUEGER APC**

By: /s/ Suzanne Burke Spencer
Suzanne Burke Spencer, Esq.
Attorneys for Plaintiff
SIGMA FINANCIAL CORP.
sspencer@sallspencer.com

complaint  20
**COMPLAINT**