PAUL A. HILDING, ESQ.
State Bar No. 110656
hilding@hildinglaw.com
JAMES H. PYLE, ESQ.
State Bar No. 224121
jpyle@hildinglaw.com
HILDING LAW FIRM
501 W. Broadway, Suite 1760
San Diego, California 92101
Tel: (619) 233-4200
Fax: (619) 233-4211

SUZANNE BURKE SPENCER, ESQ.
State Bar No. 188597
sspencer@sallspencer.com
SALL SPENCER CALLAS & KRUEGER APC
32351 Coast Highway
Laguna Beach, California 92651
Tel: (949) 499-2942
Fax: (949) 499-7403

Attorneys for Plaintiff/Counter-Defendant
SIGMA FINANCIAL CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SIGMA FINANCIAL CORPORATION, a Michigan corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GOTHAM INSURANCE COMPANY, a New York corporation; BROWN & BROWN PROGRAM INSURANCE SERVICES, INC., DBA CALSURANCE ASSOCIATES, a California Corporation; CADENCE INSURANCE BROKERS, INC., a Tennessee corporation, PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC., a New York corporation,<br><br>Defendants. | Case No.  8:15-cv-1531-AG-DFM<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>2. **FRAUD AND DECEIT (CONCEALMENT)**<br><br>3. **NEGLIGENCE**<br><br>4. **PROFESSIONAL NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

complaint - sac final

1

1

2 AND RELATED COUNTER-CLAIM.

3

4    Plaintiff SIGMA FINANCIAL CORPORATION ("Sigma") in its complaint

5 against Defendants GOTHAM INSURANCE COMPANY ("Gotham"), BROWN &

6 BROWN PROGRAM INSURANCE SERVICES, INC., DBA CALSURANCE

7 ASSOCIATES ("CalSurance"), CADENCE INSURANCE BROKERS, INC.

8 ("Cadence") and PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC.

9 ("Prosight"), alleges as follows:

10                    **JURISDICTION AND VENUE**

11    1.   This Court has subject matter jurisdiction over this action pursuant to 28

12 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship between

13 Plaintiff and all Defendants, and the amount in controversy exceeds the sum of

14 $75,000, exclusive of interest and costs.

15    2.   This Court has personal jurisdiction over Defendants inasmuch as

16 Defendants, at all times relevant, repeatedly transacted insurance business in the

17 State of California and within the geographical jurisdiction of the United States

18 District Court for the Central District of California, Southern Division.

19    3.   Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial

20 part of the events giving rise to the claims at issue in this action occurred in this

21 District.

22    4.   In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(a)(3)

23 because Defendants are subject to personal jurisdiction in this District.

24                      **NATURE OF ACTION**

25    5.   This is an insurance coverage, fraud and negligence action arising out of

26 Gotham's failure and refusal to defend and indemnify Sigma with respect to a

27 number of underlying arbitrations before the Financial Industry Regulatory

28 Authority ("FINRA").

complaint - sac final                    2
                      **SECOND AMENDED COMPLAINT**

## PARTIES

6.    Plaintiff Sigma is a Michigan corporation, with its principal place of business located in Ann Arbor, Michigan.

7.    Plaintiff is informed and believes and thereon alleges that Defendant Gotham is a New York corporation, with its principal place of business located in Morristown, New Jersey.

8.    Plaintiff is informed and believes and thereon alleges that Defendant CalSurance is a California corporation, with its principal place of business located in Orange, California.

9.    Plaintiff is informed and believes and thereon alleges that at all times relevant, CalSurance served as an insurance broker representing Sigma with regard to procuring the insurance detailed below.

10.    Plaintiff is informed and believes and thereon alleges that at all times relevant, Defendant Cadence is a Tennessee corporation, with its principal place of business located in Middleton, Wisconsin.

11.    Plaintiff is informed and believes and thereon alleges that, at the time of the insurance transactions described below, Cadence served as an agent of Gotham and/or Prosight.  The precise nature of the agency relationship between Cadence and Prosight and/or Gotham is currently unknown to Sigma, but Sigma is informed and believes that Cadence at all relevant time was an agent of one or both with respect to the transactions and conduct alleged herein.

12.    Plaintiff is informed and believes, and thereon alleges that, at the time of the insurance transactions described below, Cadence had full authority to bind Gotham and/or Prosight with respect to said transactions.

13.    Plaintiff is informed and believes and thereon alleges that, at the time of the insurance transactions described below, Cadence also served as a wholesale broker and agent of Sigma in procuring the insurance detailed below.

complaint - sac final

3

**SECOND AMENDED COMPLAINT**

14.     Plaintiff is informed and believes and thereon alleges that at all times relevant, Defendant Prosight is a New York corporation, with its principal place of business located in Morristown, New Jersey.

15.     Plaintiff is informed and believes and thereon alleges that, at the time of the insurance transactions described below, Prosight served a managing general agent of Gotham.

16.     Plaintiff is informed and believes, and thereon alleges that, at the time of the insurance transactions described below, Prosight had full authority to bind Gotham with respect to said transactions.

17.     Plaintiff is informed and believes and thereon alleges that, employees of Prosight engaged in the underwriting and claims processing conduct detailed below.

18.     The precise nature of the relationship between Gotham and Prosight is currently unknown to Sigma.  Sigma is informed and believes that Prosight and Gotham acted at all times as either principals or agents of one another.  Further discovery on the nature of the relationship between Gotham and Prosight is necessary before Sigma can allege the precise nature of that relationship.

19.     Sigma is informed and believes and thereon alleges that each named Defendant that was acting as the agent, servant, employee, partner, associate, joint venturer, co-participant, and/or principal of or with any other remaining named Defendant was, at all times herein mentioned, acting within the scope of such relationship and with the full knowledge, consent, authority, ratification, and/or permission of each remaining named Defendants.

## FACTUAL BACKGROUND

**A.     The Gotham Excess Policy**

20.     In or about June 2012, Sigma requested that its agent CalSurance purchase an excess liability insurance policy to provide additional limits of

complaint - sac final                         4

1  coverage above the limits contained in its primary liability insurance policy issued

2  by Arch Specialty Insurance Company ("the Arch Policy").

3       21.    The then-existing primary policy issued by Arch was to expire on July

4  20, 2012, and in June 2012 CalSurance was in the process of renewing that

5  coverage for another year.

6       22.    Upon renewal, the Arch Policy provided general limits of coverage of

7  $2 million per claim, and $10 million in the aggregate.

8       23.    Upon renewal, the Arch Policy also contained an endorsement which

9  provided limits of coverage for "Alternative investments," as defined therein, of $1

10 million per claim, and $5 million in the aggregate ("the AI Aggregate Limits").

11      24.    A true and correct copy of the Arch Policy for the period July 20, 2012

12 through July 20, 2013 is attached to this complaint as Exhibit 1.

13      25.    On or about June 21, 2012, Mr. Steve Knowles of CalSurance sent an

14 email to Mr. Michael McCluskey of Cadence informing Mr. McCluskey that Sigma

15 was seeking "$5 MM Excess to fit over the aggregate on the $1MM/$5MM

16 alternative investments and $2MM/$100MM [sic] general policy."

17      26.    A "Binder of Insurance" issued by Arch ("the Arch Binder") was

18 attached to the email.

19      27.    On page 2, in bold faced print, the Arch Binder noted that the

20 alternative investments coverage was "subject to a sub-limit of $1M/$5M."

21      28.    A true and correct copy of Mr. Knowles' June 21, 2012 email, with the

22 Arch Binder, is attached hereto as Exhibit 2.

23      29.    Plaintiff is informed and believes and thereon alleges that

24 Mr. McCluskey received the June 21, 2012 email and Arch Binder on or about that

25 date.

26      30.    Plaintiff is informed and believes and thereon alleges that, on or about

27 June 27, 2012, Ms. Megan Belter of Cadence sent an email to Catherine Jones of

28 Prosight, on behalf of Gotham, enclosing various application materials from Sigma,

complaint - sac final                      5

**SECOND AMENDED COMPLAINT**

1    and noting that Sigma was "seeking a $5MM excess to fit over the aggregate on the

2    $1MM/$5MM alternative investments and $2MM/$10MM general policy."

3            31.    Belter attached a copy of the Arch Binder to the email.

4            32.    A true and correct copy of Ms. Belter's June 27, 2012 email is

5    attached hereto as Exhibit 3.

6            33.    Plaintiff is informed and believes and thereon alleges that Ms. Jones

7    received the June 27, 2012 email and Arch Binder on or about that date.

8            34.    Plaintiff is informed and believes and thereon alleges that Ms. Jones

9    was employed by Prosight as an underwriter on behalf of  Gotham on or about June

10   27, 2012.

11           35.     On or about July 18, 2012, Cadence issued a binder of insurance for

12   an excess policy to be issued by Gotham ("the Gotham Binder").

13           36.    A true and correct copy of the Gotham Binder is attached hereto as

14   Exhibit 4.

15           37.    Plaintiff is informed and believes and thereon alleges that Cadence

16   was authorized by Gotham to issue the Gotham Binder.

17           38.    Plaintiff is informed and believes and thereon alleges that, in

18   July 2012, Cadence was an agent for Gotham and Prosight was Gotham's

19   managing general agent.

20           39.    The Gotham Binder does not refer to the $1 million/$5 million

21   alternative limits of coverage in the Arch Policy.

22           40.    Plaintiff is informed and believes and thereon alleges that Cadence

23   attempted to remedy the Gotham Binder's failure to specifically reference the $1

24   million/$5 million alternative limits of coverage by adding the following language:

25   "These are additional limits only after complete depletion of any primary aggregate

26   limit as described in [the Arch Policy]."

27           41.    Plaintiff is informed and believes and thereon alleges that Gotham,

28   through Prosight, received a copy of the Gotham Binder on or about July 18, 2012.

complaint - sac final                              6

**SECOND AMENDED COMPLAINT**

42.     Plaintiff is informed and believes and thereon alleges that CalSurance received a copy of the Gotham Binder on or about July 18, 2012.

43.     Gotham issued to Sigma the Gotham Policy on or about September 24, 2012, for the policy period of July 20, 2012 through July 20, 2013.

44.     A true and correct copy of the Gotham Policy is attached hereto as Exhibit 5.

45.     Plaintiff is informed and believes and thereon alleges that CalSurance received a copy of the Gotham Policy from Prosight, Gotham and/or Cadence on or about September 24, 2012.

46.     Plaintiff is informed and believes and thereon alleges that Mr. Knowles reviewed the policy to determine whether its terms were consistent with the Gotham Binder.

47.     By email dated September 24, 2012, Mr. Knowles advised Sigma that he would review the Gotham Policy before forwarding it to Sigma.

48.     A true and correct copy of Mr. Knowles email of September 24, 2012 is attached hereto as Exhibit 6.

49.     After completing his review of the Gotham Policy, Mr. Knowles emailed a copy of the Gotham Policy to Sigma on September 24, 2012 at approximately 5:24 p.m. Central Time.

50.     A true and correct copy of Mr. Knowles subsequent email of September 24, 2012 is attached hereto as Exhibit 7.

**B.     The Underlying Claims**

51.     During the Gotham Policy period, a total of 23 claims were filed against Sigma.

52.     All of these claims were brought by clients of Sigma.

53.     All of these claims were arbitrations, filed with FINRA (the "FINRA Claims").

complaint - sac final

7

**SECOND AMENDED COMPLAINT**

54.     Of the FINRA Claims, a number were filed before Sigma received a copy of the Gotham Policy, including a claim entitled *EJJY Corporation v. Sigma Financial Corp.*, FINRA Arbitration No. 12-02635 ("the EJJY Claim").

55.     The EJJY Claim is dated July 17, 2012, but was not stamped "received" by FINRA until August 15, 2012.

56.     A true and correct copy of the EJJY Claim is attached hereto as Exhibit 8.

**C.     The Exhaustion of Primary Coverage and Tender to Gotham**

57.     All of the FINRA Claims were tendered to Arch on Sigma's behalf.

58.     Arch defended and settled a number of the FINRA Claims until it exhausted the limits of the Arch Policy.

59.     In November and December 2014, Sigma informed Mr. Knowles that the Arch Policy would be exhausted "in two to three months," and requested that Mr. Knowles contact Gotham about handling the claims after exhaustion occurred.

60.     Sigma is informed and believes and thereon alleges that Mr. Knowles and/or Cadence and/or Arch informed Prosight, as Gotham's agent, in or about November or December 2014 of the imminent exhaustion of the Arch Policy, and at that time requested that Gotham be prepared to defend and settle the remaining FINRA Claims once exhaustion occurred.

**D.     Gotham Rejects Numerous Request to Drop Down**

61.     By letter dated January 7, 2015, China Ladner, an employee of Gotham's affiliate and agent Prosight, acknowledged that the adjuster for Arch, William Jackson, had recently informed her that "the Arch Policy's aggregate limit will soon be exhausted," and that Jackson contended "such exhaustion occurs after payment of $5 million" under the Arch Policy.

62.     Ms. Ladner disagreed with Mr. Jackson and stated the Gotham Policy would be triggered "only if defense costs and/or indemnity exceed . . . $10 million in the aggregate for all claims."

complaint - sac final

8

**SECOND AMENDED COMPLAINT**

63. A true and correct copy of Ms. Ladner's January 7, 2015 letter is attached hereto as Exhibit 9.

64. Plaintiff is informed and believes and thereon alleges that, at the time she wrote and transmitted the January 7, 2015 letter, Ms. Ladner had full authority to issue the letter on Gotham's behalf.

65. In response to the January 7 letter, CalSurance worked with Cadence to attempt to persuade Gotham that Mr. Jackson was correct that exhaustion of the Arch Policy would occur after Arch had paid $5 million for the FINRA Claims.

66. In particular, by email dated January 23, 2015, Mr. McCluskey of Cadence emailed Ms. Ladner and advised her that it was the parties' intention when Gotham bound coverage that "the excess limits attach over 'any' aggregate limit in the underlying policy whether that be the $5M sublimit or the $10M policy limit."

67. Mr. McCluskey further stated that the underwriter acting on Gotham's behalf, Ms. Jones, was aware of this intention.

68. Mr. McCluskey's January 23, 2015 email attached a copy of the original submission which, he contended, clearly spelled out that "we were applying for coverage over both the 10M aggregate and the $5M sublimit."

69. Mr. McCluskey's January 23, 2015 email also attached a copy of the Gotham Binder.

70. Ms. Ladner received the January 23, 2015 email and attachments on or about January 23, 2015.

71. A true and correct copy of the January 23, 2015 email, with attachments, is attached hereto as Exhibit 10.

72. Mr. McCluskey followed up by email dated February 5, 2015, requesting a response to his January 23 email.

73. A true and correct copy of Mr. McCluskey's February 5, 2015 email is attached hereto as Exhibit 11.

**SECOND AMENDED COMPLAINT**

74.     Ms. Ladner responded by email dated February 12, 2015, advising that, even after review of the underwriting file, "Gotham maintains its current position."

75.     Ms. Ladner further advised that Gotham would not defend or indemnify Sigma for the remaining claims until Gotham received confirmation "that the $10 million aggregate limit has been fully exhausted."

76.     A true and correct copy of Ms. Ladner's email of February 12, 2015 is attached hereto as Exhibit 12.

77.      Plaintiff is informed and believes and thereon alleges that CalSurance and Knowles agree with Cadence that it was the parties' intention when the Gotham coverage was bound that "the excess limits attach over 'any' aggregate limit in the underlying policy whether that be the $5M sublimit or the $10M policy limit."

78.     By email dated February 12, 2015, Mr. Knowles advised Sigma that he was "deeply disappointed and in total disagreement with Gotham's position."

79.     A true and correct copy of Mr. Knowles' email of February 12, 2015 is attached hereto as Exhibit 13.

80.     By email dated February 18, 2015, Mr. Knowles advised Sigma that Cadence was "escalating the issue with underwriting as he does not agree with the claims department decision."

81.     A true and correct copy of Mr. Knowles' February 18, 2015 email is attached hereto as Exhibit 14.

82.     Plaintiff is informed and believes and thereon alleges that, in spite of the additional efforts of Cadence, Gotham continued to maintain its position that it need only drop down after exhaustion of the Arch Policy's $10 million general aggregate limit.

83.     As a result of Gotham's continued unreasonable denial of its obligation to drop down after exhaustion of the Arch Policy's $5 million AI

**SECOND AMENDED COMPLAINT**

1    aggregate limit and to provide the coverage Sigma expressly requested and

2    Gotham's agents should have provided, Sigma was forced to retain coverage

3    counsel.

4         84.    By email dated March 20, 2015 to counsel for Gotham, counsel for

5    Sigma once again tried to persuade Gotham to re-consider and provide coverage

6    after exhaustion of the Arch Policy's AI aggregate limit.

7         85.    Plaintiff is informed and believes and thereon alleges that counsel

8    representing Gotham received the March 20, 2015 email on or about that date.

9         86.    A true and correct copy of the March 20, 2015 email is attached hereto

10   as Exhibit 15.

11        87.    Once again, Gotham refused to change its position that its coverage

12   only dropped down after exhaustion of the $10 million aggregate limits.

13        88.    By telephone conversation and email dated March 24, 2015, counsel

14   for Gotham confirmed that Gotham had not changed position, that for this reason

15   Gotham would not offer any settlement authority for the EJJY Claim mediation that

16   was occurring that day, but that Gotham had no objection to Sigma settling the

17   claim with its own funds.

18        89.    A true and correct copy of the March 24, 2015 email, and the response

19   of Gotham's counsel later the same day, is attached hereto as Exhibit 16.

20        **E.    Sigma Pays Post-Exhaustion Defense Costs and Settlements**

21        90.    After Gotham's refusal to drop down, Sigma negotiated a settlement of

22   the EJJY Claim using its own funds.

23        91.    Thereafter, Sigma incurred substantial additional expense defending

24   and settling a number of the remaining FINRA Claims.

25        92.    As of September 1, 2015, the total additional expense amount Sigma

26   has paid from its own funds for the defense and settlement of the FINRA Claims

27   exceeds $1,310,000.

28

complaint - sac final                          11

93.     As of September 1, 2015, one of the FINRA Claims remains pending against Sigma.

94.     Sigma has paid in full all retention amounts due.

**F.     The Court's Determinations on Gotham's and Sigma's Cross-Motions for Summary Judgment**

95.     Sigma's initial Complaint alleged against Gotham claims for (1) Breach of Contract (Duty to Defend); (2) Breach of Contract (Duty to Indemnify); (3) Declaratory Relief (Duty to Defend and Indemnify); (4) Declaratory Relief (Reformation); and (5) Breach of the Implied Covenant of Good Faith and Fair Dealing.  Sigma's claims against Gotham were based on Sigma's position that the parties' clear intention was that the Gotham Policy would drop down after exhaustion of the Arch Policy's $5 million AI aggregate limit and that the contract should thus be interpreted to so provide or, in the alternative, reformed to accord with the parties' clear intentions.

96.     On May 18, 2016, this Court entered an order denying Plaintiff's motion for partial summary judgment on its claim for a declaration that Gotham had a duty to defend and indemnify and granting Gotham's Motion for Summary Judgment on the first through fourth claims for relief against Gotham.  In that order, the Court expressly held: "much of the extrinsic evidence referenced and included by the parties strongly suggests CalSurance, Cadence, and Gotham erred on an important detail of the excess coverage Sigma said it wanted."  However, because the Court found that the Gotham Policy unambiguously did not provide that excess coverage, the extrinsic evidence was not considered in interpreting the contract.  Summary judgment in Gotham's favor was accordingly entered on all but the fifth claim for bad faith.

97.     The filing of this amended complaint omitting the contract-based claims as to which Gotham was granted summary judgment is not intended as a waiver of, and Sigma hereby expressly preserves, all appellate rights with respect to

complaint - sac final

12

**SECOND AMENDED COMPLAINT**

1  the Court's order granting partial summary judgment in Gotham's favor and

2  denying Sigma's motion for partial summary judgment.

3  ## CLAIMS FOR RELIEF

4  ## FIRST CLAIM FOR RELIEF

5  **Breach of the Implied Covenant of Good Faith and Fair Dealing**

6  **(Against Defendant Gotham)**

7  98. Plaintiff realleges and incorporates by reference herein paragraphs 1

8  through 97, as if set forth at length herein.

9  99. Plaintiff has fulfilled all obligations and conditions on its part to be

10  performed under the terms of the Gotham Policy.

11  100.    Implied in the Gotham Policy by operation of law is a covenant of

12  good faith and fair dealing which requires the insurer to act as a fiduciary, and to

13  consider the interests of its insured as being at least equal to its own.

14  101.    The implied covenant of good faith and fair dealing requires, *inter*

15  *alia*, that insurers:  (1) conduct a fair, impartial, complete and thorough investigation

16  of all claims; (2) review and consider all potential bases for coverage; (3) disclose to

17  their insured all benefits or bases for coverage that might apply to the underlying

18  action; (4) treat the interests of their insureds as equal to their own; (5) evaluate and

19  participate meaningfully in efforts to settle lawsuits against the insureds; (6) accept

20  reasonable settlement demands within policy limits to protect their insureds and take

21  them out of harm's way; (7) promptly respond to communications from insureds and

22  promptly pay amounts due and owning under the policies; and (8) fully comply with

23  the requirements of the California Insurance Code, the Fair Claims Settlement

24  Practices regulations, and all other requirements of California statutory and case

25  law.

26  102.    The implied covenant of good faith and fair dealing continues even

27  after coverage litigation commences.  *White v. Western Title Ins. Co.*, 40 Cal. 3d

28  870, 885-886 (1985).

complaint - sac final                         13

103.     Plaintiff is informed and believes and thereon alleges that Gotham breached the implied covenant as follows:  (a)  By deliberately or negligently issuing the Gotham Policy with policy language that Gotham could later cite to falsely assert that it owed no coverage obligations until the $10 million general limit of the Arch Policy was exhausted; (b) By failing and refusing to re-consider and acknowledge its coverage obligations after it was reminded of the parties' true intentions regarding exhaustion of the Arch AI Aggregate Limits; (c) By unreasonably failing and refusing to pay amounts due and owing under the Gotham Policy;  (d)  By unreasonably failing and refusing to consider the interests of Sigma as equal to its own, and accordingly unreasonably evaluating exhaustion with the goal of withholding policy benefits; (e) With the intent to defraud its insured, violating California's Fair Claims Settlement Practices Regulations, Title 10, § 2695.5(b) by failing to respond to communications from its insureds within fifteen (15) calendar days after receipt of communication where it was reasonably clear that a response was requested, and violating § 2695.7(b) by failing to accept or deny a claim, in whole or in part, within forty (40) calendar days after receiving proof of the claim; and (f) By unreasonably refusing to settle the EJJY Claim, exposing Plaintiff to the potential for a substantial judgment.

104.     Plaintiff is informed and believes that Gotham has breached the implied covenant of good faith and fair dealing through other wrongful conduct not yet fully ascertained, according to proof at trial.

105.     As a legal result of the foregoing wrongful conduct of Gotham, Sigma has suffered general, special, and consequential damages, plus interest and attorney's fees in an amount to be proven at trial.

106.   Gotham committed the foregoing wrongful conduct with the intent to deceive and defraud its insured at a time when it was most vulnerable and in need of the superior resources of its insurer, and therefore punitive damages are appropriate in an amount sufficient to punish and make an example of Gotham to

complaint - sac final                                      14

Case 8:15-cv-01531-AG-DFM   Document 81   Filed 09/28/16   Page 15 of 18   Page ID #:1875

1    prevent it from engaging in such deceitful conduct in the future.

2                          **SECOND CLAIM FOR RELIEF**

3                          **Fraud and Deceit (Concealment)**

4                      **(Against Defendants Gotham and Prosight)**

5        107.   Plaintiff realleges and incorporates by reference herein paragraphs 1

6    through 97, as if set forth at length herein.

7        108.   Gotham and Prosight each had a duty to disclose to Sigma all facts

8    within its knowledge believed to be material to its insurance contract.  *See, e.g.,*

9    Cal. Ins. Code §§ 330 and 332.

10       109.   From June 2012 through January 2015, Gotham and Prosight, with the

11   assistance, consent, and knowledge of one another, failed to disclose to, and

12   concealed from, Sigma the material facts that, despite the unambiguous request for

13   excess coverage by Sigma to fit over the $5 million Arch Policy AI Aggregate

14   Limit (1) the Gotham Policy did not include the excess coverage over the $5

15   million Arch Policy AI Aggregate Limit requested by Sigma; and (2) a gap in

16   coverage between the $5 million AI Aggregate Limit and the $10 million Arch

17   Policy general aggregate limit existed.

18       110.   The facts Gotham and Prosight failed to disclose were material.

19       111.   At all times prior to January 2015, Sigma was ignorant of these facts

20   that Gotham and Prosight failed to disclose.  Sigma reasonably relied on the

21   absence of these facts in purchasing the Gotham Policy and paying a premium of

22   over $250,000 for the policy.  Had Sigma known the true facts, it would not have

23   purchased the Gotham Policy or would have taken steps to place the coverage that

24   it wanted elsewhere.  Sigma would not have paid an exorbitant premium for an

25   excess policy that contained a $5 million gap in coverage had it known beforehand

26   of the gap and would not have relied on the existence of the coverage it had

27   requested by failing to obtain it elsewhere.

28       112.   The failures to disclose herein alleged were done with the intent to

complaint - sac final                        15

1  deceive and defraud Sigma and to induce Sigma to act in reliance on the absence of

2  the facts not disclosed.

3      113.   As a proximate result of the concealment of the Defendants as herein

4  alleged, Sigma has been damaged in an amount to be proven at trial, but of no less

5  than $1,300,000.

## THIRD CLAIM FOR RELIEF

### Negligence

### (Against Defendants Gotham and Prosight)

9      114.    Plaintiff realleges and incorporates by reference herein paragraphs 1

10  through 97, as if set forth at length herein.

11      115.   Gotham and Prosight owed a duty to Sigma to exercise ordinary care

12  in performing their services and engaging in the conduct herein alleged in a manner

13  that would not cause harm to Sigma.

14      116.   Gotham and Prosight breached that duty by engaging in the conduct

15  herein alleged, including, but not limited to, failing to provide the insurance

16  contract Sigma requested, failing to include the excess coverage over the Arch AI

17  Aggregate Limits, and failing to disclose to Sigma that the Gotham Policy did not

18  include such coverage.

19      117.    As a proximate cause of Gotham and Prosight's breach, Plaintiff

20  has suffered damage in an amount to be proven at trial, but of not less than

21  $1.3 million.

22      118.   Gotham, as principal, is also vicariously liable as a matter of law for

23  the negligent conduct as herein alleged of each of its agents, including Prosight,

24  CalSurance and Cadence.  To the extent that Prosight is the principal of Gotham,

25  Cadence and/or CalSurance, it too is vicariously liable for the conduct of Gotham,

26  CalSurance and Cadence alleged herein.

27

28

complaint - sac final                          16

**SECOND AMENDED COMPLAINT**

# FOURTH CLAIM FOR RELIEF

## Professional Negligence

### (Against Defendants CalSurance, Cadence, Gotham and Prosight)

119.   Plaintiff realleges and incorporates by reference herein paragraphs 1 through 97, as if set forth at length herein.

120.   As professional insurance brokers acting in their capacity as Sigma's agents in procuring coverage excess to the Arch Policy, Defendants CalSurance and Cadence owed Sigma a duty to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise.

121.   Defendants CalSurance and Cadence breached that duty by, among other things, failing to adequately review the Gotham Policy to assure that its terms conformed to the intention of the parties, and to the terms of the Gotham Binder, thereby permitting Gotham to falsely assert that exhaustion of the Arch Policy would not occur until the $10 million Arch general aggregate limits had been exhausted, rather than the $5 million Arch AI Aggregate Limits.  Moreover, to the extent that CalSurance or Cadence knew or should have known that the Gotham Policy did not provide for the specific coverage Sigma requested, said Defendants breached their duties by failing to disclose such material facts to Sigma.

122.   As a proximate result of CalSurance and Cadence's negligence, Plaintiff has been injured, in that Gotham has refused to drop down and provide coverage upon exhaustion of the Arch Policy's AI aggregate limit.

123.   As a result of the professional negligence of Defendants CalSurance and Cadence, Sigma has suffered damages by having to defend the FINRA Claims on its own after exhaustion of the AI Aggregate Limits of the Arch Policy and by having to settle the EJJY Claim and other claims on its own without any contribution by Gotham, suffering damages in excess of  $1,310,000 to date, and will continue to suffer damages with respect to the ongoing FINRA Claims, according to proof at trial.

SECOND AMENDED COMPLAINT

1    124.   As a further result of the professional negligence of Defendants

2  CalSurance and Cadence, Sigma has incurred and will continue to incur legal fees

3  for coverage counsel to attempt to obtain from Gotham the policy benefits to which

4  they are entitled, according to proof at trial.

5    125.   In addition, Gotham, as principal, is vicariously liable for the conduct

6  of its agents, CalSurance and Cadence, and is therefore equally liable for their

7  negligent conduct as alleged herein.  To the extent that Prosight is the principal of

8  Cadence and/or CalSurance, it too is vicariously liable for the conduct of

9  CalSurance and Cadence alleged herein.

### PRAYER

11    1.    For general, special, consequential and incidental damages in an

12  amount exceeding $1,310,000, according to proof;

13    2.   For prejudgment interest at the legal rate;

14    3.   For reasonable attorney's fees incurred to recover policy benefits;

15    4.   For punitive damages; and

16    5.   For such other and further relief as the Court may deem just and proper.

17                              Respectfully submitted,

18  DATED:  September 28, 2016        **SALL SPENCER CALLAS & KRUEGER**
                                     A Professional Corporation
19

20                                      /s/Suzanne Burke Spencer
                                   By: _____
21                                      Suzanne Burke Spencer

22                                 Attorneys for Plaintiff/Counter-Defendant
                                   SIGMA FINANCIAL CORPORATION
23

      DATED:  September 28, 2016        **HILDING LAW FIRM**
24

25                                      /s/Paul A. Hilding
                                   By: _____
26                                      Paul A. Hilding
                                        James H. Pyle
27

28                                 Attorneys for Plaintiff/Counter-Defendant
                                   SIGMA FINANCIAL CORPORATION

complaint - sac final                    18

**SECOND AMENDED COMPLAINT**