Mark C. Goodman (Bar No. 154692)
Brandon P. Rainey (Bar No. 272341)
HOGAN LOVELLS US LLP
3 Embarcadero Center, 15th Floor
San Francisco, California 94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499
Email: mark.goodman@hoganlovells.com
Email: brandon.rainey@hoganlovells.com

Attorneys for Defendant and Counter/Cross-Claimant GOTHAM INSURANCE COMPANY and Specially Appearing Defendant PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SIGMA FINANCIAL CORPORATION, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>GOTHAM INSURANCE COMPANY, a New York corporation; BROWN & BROWN PROGRAM INSURANCE SERVICES, INC., D/B/A CALSURANCE ASSOCIATES, a California Corporation; CADENCE INSURANCE BROKERS, INC., a Tennessee corporation, PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC., a New York corporation,<br><br>Defendants.<br><br>AND RELATED CROSS-CLAIM | Case No. 8:15-cv-1531-AG-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 9(b), 12(b)(6)]<br><br>Date: October 31, 2016<br>Time: 10:00 a.m.<br>Judge: Hon. Andrew Guilford<br>Place: Courtroom 10D<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY OF SIGMA'S ALLEGATIONS................................................ 4

III. DISCUSSION..................................................................................................... 5

    A. Legal Standard ..................................................................................... 5

    B. Sigma's Bad Faith Claim Fails Because Benefits Are Not Due........... 6

    C. Sigma's New Claim For Fraud Has Not Been (And Cannot Be) Stated With Particularity................................................................... 7

    D. Sigma's New Claims Are Barred By Settled California Law .............. 9

    E. Sigma's Vicarious Liability Claim Fails As Against Gotham And ProSight ..............................................................................................11

IV. CONCLUSION ...............................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
 355 F.3d 1179 (9th Cir. 2004) ................................................................................. 6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ....................................................................................... 3, 6, 12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................ 6

*Gardens Bicycle Casino v. Great Am. Ins. Co.*,
 124 F. App'x 551 (9th Cir. 2005) ........................................................................ 3, 9

*Guerard v. CNA Fin. Corp.*,
 2009 WL 3152055 (N.D. Cal. Sept. 23, 2009) .................................................... 3, 9

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ................................................................................. 7

*Kee v. Mersch*,
 297 F. App'x 615 (9th Cir. 2008) ...................................................................... 6, 13

*Love v. Fire Ins. Exch.*,
 221 Cal.App.3d 1136 (1990) ........................................................................ 2, 7, 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
 519 F.3d 1025 (9th Cir. 2008) ................................................................................. 7

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*,
 2011 WL 4501945 (C.D. Cal. Sept. 28, 2011) ........................................... 3, 7, 8, 9

*Olsen v. Idaho State Bd. of Med.*,
 363 F.3d 916 (9th Cir. 2004) ................................................................................... 5

*Rios v. Scottsdale Ins. Co.*,
 119 Cal.App.4th 1020 (2004) .................................................................... 3, 9, 10, 11

*Skilstaf, Inc. v. CVS Caremark Corp.*,
 669 F.3d 1005 (9th Cir. 2012) ................................................................................. 6

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)..................................................................................6

*Van't Rood v. Cty. of Santa Clara*,
   113 Cal.App.4th 549 (2003)..................................................................................12

*Vess v. Ciba–Geigy Corp. U.S.A.*,
   317 F.3d 1097 (9th Cir. 2003)..............................................................................3, 7

*Waller v. Truck Ins. Exch., Inc.*,
   11 Cal.4th 1 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) .........2, 6, 10

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)..............................................................................................3, 12

Fed. R. Civ. P. 9(b) ....................................................................................................2, 7

Fed. R. Civ. P. 12(b)(6)................................................................................ 4, 5, 6, 12, 14

Fed. R. Evid. 201 ..........................................................................................................5

iii    BRIEF IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I. INTRODUCTION

The Court has already held that the terms, conditions and exclusions of the excess insurance policy that Gotham issued to Sigma (the Gotham Excess Policy) are unambiguous and that no obligations are triggered under that policy with respect to the FINRA claims against Sigma. (Dkt. 53, 81 at 7-8.) In light of that order, Sigma is now trying to change its theory of the case from one based on contract and has filed an amended complaint with a slew of completely new claims against Gotham Insurance Company and ProSight Specialty Management Company, Inc.[1] Like its prior claims, none of those last ditch claims (bad faith, fraud, negligence and professional negligence (*see* Dkt. 81)) has any merit and all of them must be dismissed with prejudice pursuant to the Federal Rules of Civil Procedure and well-settled California law.

Tellingly, to support its new claims, Sigma relies on the same allegations that failed to support its contract-based claims. Many of those allegations -- particularly those regarding or depending on the purported ambiguity of the Gotham Excess Policy -- are moot as a result of the Court's express determinations to the contrary. Sigma's remaining allegations can be summarized as follows: (1) Sigma sought excess insurance from Gotham through CalSurance (Sigma's insurance broker) (*id.* at 4-5); (2) CalSurance reviewed the terms, conditions and exclusions of the Gotham Excess Policy prior to accepting the policy (*id.* at 7); (3) the Gotham Excess Policy is unambiguous and is only triggered by complete exhaustion of the $10 million general aggregate limit of the Arch primary policy (*id.* at 12; *see also* Dkt. 53); (4) Sigma was repeatedly sued for its failed "alternative investments," exhausted the $5 million cap on coverage for such investments under the primary policy and then sought coverage under the Gotham Excess Policy (*id.* at 7-8); and

---

[1] ProSight has not been served and is specially appearing for purposes of this motion to dismiss. None of ProSight's rights with respect to proper service are waived by this special appearance.

(5) Gotham denied coverage because the $10 million general aggregate limit of the Arch primary policy had not yet (and still has not) been exhausted (*id*. at 8-11). Gotham's coverage position was correct, as confirmed by the Court's order on summary judgment. On these allegations, Sigma's second amended complaint fails to state any cognizable claims against Gotham or ProSight as a matter of law.

For instance, Sigma cannot prevail on its first claim for bad faith against Gotham because policy benefits are not due under the Gotham Excess Policy and, thus, were not and could not have been unreasonably withheld as a mater of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 35-6 (1995), *as modified on denial of reh'g* (Oct. 26, 1995); *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151-53 (1990). Thus, even if Sigma had adequately pled this claim in its amended complaint, such allegations would directly contradict the Court's determination that there is no coverage obligation under the Gotham Excess Policy at this time. (Dkt. 53.) Accordingly, Sigma's bad faith claim must be dismissed with prejudice.

Sigma's second claim for fraud by concealment likewise fails for several reasons. First, Sigma has failed to plead its fraud claim with the particularity required under the Federal Rules (*see* Fed. R. Civ. P. 9(b)) and Sigma cannot legitimately plead such allegations because neither Gotham nor ProSight actually concealed or suppressed any material facts regarding the terms, conditions and exclusions of the Gotham Excess Policy. As this Court has already determined, the terms of the policy at issue are expressly and plainly set out in the insurance contract. (Dkt. 53.) It cannot be reasonably disputed (and there are no allegations to the contrary in the amended pleading) that Sigma received, reviewed and approved the unambiguous terms, conditions and exclusions of the Gotham Excess Policy prior to the policy's issuance and then accepted, paid for and retained the policy for years without objection or even question. (Dkt. 53, 81.) Under the circumstances, where there is no doubt that the plaintiff had absolute access to all of the terms about which it now complains and the Court has already found that all of

those terms are plain and clear, *none* of the necessary elements of a fraud by concealment claim can be met. *Vess v. Ciba–Geigy Corp. U.S.A.,* 317 F.3d 1097, 1106 (9th Cir. 2003); *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 2011 WL 4501945, at *4 (C.D. Cal. Sept. 28, 2011). Because Sigma admits that it reviewed and accepted the unambiguous terms of a written contract, it cannot maintain fraud claims alleging that the terms of the contract were not disclosed. *See Gardens Bicycle Casino v. Great Am. Ins. Co.*, 124 F. App'x 551, 553 (9th Cir. 2005); *Guerard v. CNA Fin. Corp.*, 2009 WL 3152055 at *5 (N.D. Cal. Sept. 23, 2009).

Critically, on virtually the same facts as those alleged in this case, California courts (applying California law) have held that an insurer is "blameless" where an insured purchases an unambiguous insurance policy but does not have the coverage it thought it had when it purchased the policy. *Rios v. Scottsdale Ins. Co.*, 119 Cal.App.4th 1020, 1029 (2004). Thus, even assuming that Sigma applied for different coverage than it eventually purchased (a point that Gotham and ProSight dispute but will assume for purposes of this motion), the Gotham Excess Policy constituted a counteroffer as a matter of law and an enforceable agreement between the parties was created when Sigma reviewed, accepted and paid for that policy. *Id.* There simply is no support for Sigma's contention here that a fraud claim can lie where a plain and unambiguous contract was actually delivered to the plaintiff. Accordingly, under *Rios*, neither Gotham nor ProSight can be liable for fraud or negligence and Sigma's second, third and fourth claims must be dismissed.

Finally, Sigma's fourth claim regarding Gotham's and ProSight's vicarious liability for CalSurance's and Cadence's professional negligence is just a one-paragraph legal conclusion tacked onto a claim against two other parties. As such, it must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make maters even worse, Sigma's conclusory allegation is nonsensical and impossibly vague. *See* Fed. R. Civ. P. 8(a)(2). Accordingly, Sigma's fourth claim must also be dismissed.

## II. SUMMARY OF SIGMA'S ALLEGATIONS[2]

The second amended complaint alleges that CalSurance contacted Cadence in June 2012 regarding excess insurance for Sigma. (Dkt. 81 at 4.) At all relevant times, CalSurance was Sigma's agent and its insurance broker with respect to the excess insurance at issue in this case. (*Id.* at 3.) The Arch primary policy -- over and above which Sigma was seeking excess insurance -- provided limits of $2 million per claim and $10 million in the aggregate. (*Id.* at 5.)

On or about June 27, 2012, Cadence sent an email to Ms. Catherine Jones, an underwriting professional for ProSight Specialty Insurance (Gotham's managing agent), and attached Sigma's application for excess insurance. (*Id.* at 5-6.) Cadence advised Gotham, through Ms. Jones, that Sigma was seeking "$5M excess of [the] $10M policy they already have" and further clarified that the excess insurance Sigma was requesting would be "excess over $10M[.]" (Dkt. 81-3.) Cadence also noted that Sigma had "a bit of claims history. . . . However, since [Gotham would be] putting up excess over $10M, the chances of [Gotham] being hit [were] small since [Sigma had not] yet gotten close to that $10M limit in one year." (*Id.*) On that same day, Cadence sent CalSurance a "premium indication" that unambiguously stated the "Coverage Offered" would be issued on the terms of "Policy Form BD POL Form 2011_02_04," attached a copy of those terms -- which are the same unambiguous coverage terms that Sigma eventually purchased and this Court has already interpreted as "clear" – and further expressly stated that the "Limit of Liability Offered" was "$5,000,000 [excess of the] $10,000,000 Arch limit[.]" (Dkt. 35-3 at 3-7.)[3]

---

[2] Gotham and ProSight do not admit the truth of Sigma's allegations, which are summarized herein solely for purposes of the Court's Rule 12(b)(6) analysis. To the extent that Gotham and/or ProSight do not expressly dispute the truth of certain allegations in this motion, any such failure should not be construed as a concession as to the truth of allegations that are not challenged.

[3] The premium indication is part of the record in this case and, thus, is properly

1   On July 18, 2012, Cadence sent CalSurance and Sigma a memorandum
2   summarizing the basic terms of the insurance that Gotham would issue. (Dkt. 81 at
3   6.) Consistently with the parties' prior discussions and indications, that document
4   stated that Gotham would issue $5 million of excess coverage over the $10 million
5   aggregate limit of the primary policy. (*Id*.) It also contained the same provisions
6   set forth in the June 27 premium indication, with the addition of the following
7   clarifying language that specified that Gotham would not provide insurance in
8   excess of any "per claim" limits:

> These are additional limits only after complete depletion of any primary aggregate limit of liability as described in Arch Insurance Group's Policy # SBD0000659-08. In no event will any limit provided by Gotham Insurance Company apply excess of the underlying *per claim* limit of liability. (Dkt. 81-4, original emphasis.)

On August 31, 2012, Gotham sent Cadence the Gotham Excess Policy, stating "Please review to make sure everything is in order." (Dkt. 35-5.) CalSurance reviewed the Gotham Excess Policy on or about September 24, 2012, approved it later that day and sent it to Sigma, which accepted, paid for and retained the policy for years without objection or reservation. (Dkt. 81 at 7.)

### III. DISCUSSION

#### A. Legal Standard

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must be guided by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*,

---

the subject of judicial notice. Fed. R. Evid. 201. Sigma conceded that both the premium indication and the proposed terms of excess insurance were issued in June 2012. (Dkt. 46 at 5.) Although Sigma has since objected to the meaning of the terms outlined therein -- years after the issuance of that document and only in the context of this litigation -- those objections were mooted when the Court determined that the coverage provisions were unambiguous. (Dkt. 53.) To the extent that this premium indication constitutes a matter outside of the pleadings, Gotham and ProSight respectfully request that the Court convert this motion to dismiss into a motion for summary judgment. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 921-22 (9th Cir. 2004).

550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (citation omitted). A motion to dismiss under Rule 12(b)(6) must be granted when a complaint fails to state a claim on which relief can be granted, even where all of the factual allegations in the complaint are accepted as true and construed in the light most favorable to the nonmoving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678, *citing Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. Unwarranted or unsupported factual inferences should also be disregarded. *Kee v. Mersch*, 297 F. App'x 615, 617 (9th Cir. 2008); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief[.]" *Ashcroft v. Iqbal*, 556 U.S. at 679 (internal quotation marks omitted). The rationale is obvious -- there is no need to subject a defendant to "the expense of discovery and continued litigation" where the allegations in a complaint are legally deficient. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.     Sigma's Bad Faith Claim Fails Because Benefits Are Not Due**

Sigma's first cause of action for bad faith (breach of the implied covenant of good faith) fails as a matter of law because, in light of the conspicuous and unambiguous terms of the Gotham Excess Policy (*see* Dkt. 53), no benefits are due to Sigma or were withheld unreasonably, and ***both*** elements are required to state a bad faith claim under California law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th at 35-6; *Love v. Fire Ins. Exch.*, 221 Cal.App.3d at 1151-53. "California law is clear,

that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008). Here, there has been no breach of contract as a matter of law, so Sigma's claim for bad faith necessarily fails and must be dismissed with prejudice. (Dkt. 53.)

### C. Sigma's New Claim For Fraud Has Not Been (And Cannot Be) Stated With Particularity

Rule 9(b) requires plaintiffs to state fraud claims with particularity: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." A court must dismiss a fraud claim when the foundational allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d at 1107. To meet that exacting standard in the Ninth Circuit, a plaintiff must articulate "the who, what, when, where, and how of the misconduct alleged[.]" *Id.* at 1106; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009). At a minimum, a plaintiff must plead the following elements to state a claim for fraud by concealment with particularity:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. (*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 2011 WL 4501945, at *4 (C.D. Cal. Sept. 28, 2011).)

Here, Sigma has failed to satisfy any of these requirements -- and cannot ever satisfy them -- because as a matter of law and of fact, neither Gotham nor ProSight concealed or suppressed anything regarding the coverage afforded under the Gotham Excess Policy. Instead, as the Court has already found, the contract terms here are unambiguous and were unquestionably in Sigma's possession at all relevant times. (Dkt. 53.) Thus, the foundation of Sigma's fraud claim is directly contradicted by the findings of the Court. (*See* Dkt. 81 at 15 (alleging that Gotham

and ProSight never disclosed the fact that coverage under the Gotham Excess Policy would only be triggered on exhaustion of the $10 million general aggregate limit of the Arch primary policy) and Dkt. 53 (the Court's order finding that the insurance policy clearly sets forth that the Gotham Excess Policy is only triggered after exhaustion of the $10 million aggregate limit of the Arch policy).) The Court has already held that the "simple truth" is that the terms, conditions and exclusions of the Gotham Excess Policy are unambiguous and straightforward and that Gotham's coverage obligations can only be triggered by full exhaustion of the general aggregate limit of the underlying primary policy. (Dkt. 53 at 3, 6.) This is the same clear contract that Sigma and its broker always had in their possession, custody and control. It is simply absurd for Sigma to argue that Gotham or ProSight should be liable for fraud for allegedly failing to disclose the terms of a contract when: (1) the relevant terms, conditions and exclusions of that agreement are unambiguous as a matter of law (*see id.*); (2) those same terms, conditions and exclusions were contemplated for several months prior to issuance of the policy in the premium indication, *i.e.*, the insurance coverage that Gotham offered to sell to Sigma and the terms on which such coverage would be issued (*see* Dkt. 35-3 at 4-7; Dkt. 81 at 5-6); (3) the same terms, conditions and exclusions were delivered to Sigma and CalSurance in the Gotham Excess Policy (Dkt. 81 at 7); (4) and Sigma approved, retained and paid for the coverage delineated in both the premium indication and in the Gotham Excess Policy without objection (*id.*).

The bottom line is this: How could Gotham and ProSight have "concealed or suppressed a material fact" when all of the allegedly suppressed facts were in the contract delivered to Sigma, a contract that was reviewed and approved prior to the effective date of the policy and then accepted, paid for and retained for years without objection? *See Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 2011 WL 4501945, at *4. Without any concealment or suppression of a material fact, none of the other factors required for Sigma to state its fraud claim with

particularity can be pled. *Id.* The "reasonable reliance" element of Sigma's fraud claim is particularly lacking. In other words, even if Sigma had adequately pled an intentionally concealed or suppressed fact that was designed to defraud Sigma (and that Sigma did not know to be false), Sigma's reliance was, as a matter of law, unjustifiable because the terms of the Gotham Excess Policy are unambiguous and control. *Bell Gardens Bicycle Casino v. Great Am. Ins. Co.*, 124 F. App'x at 553 (an insured's reliance on a summary of policy provisions and an agent's statement contradicting plain policy language is, "as a matter of law, not justified"); *Guerard v. CNA Fin. Corp.*, 2009 WL 3152055 at *5 (stating the well-settled rule that "receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he cannot thereafter complain that he did not read it or know its terms"). Accordingly, Sigma has failed to adequately plead a fraud claim and the claim must be dismissed with prejudice.

### D. Sigma's New Claims Are Barred By Settled California Law

Sigma's allegations in support of its new fraud and negligence claims are that: (1) Sigma applied for excess insurance that would be triggered on exhaustion of the $5 million "alternative investments" sub-limit, not the $10 million aggregate limit of the primary policy (Dkt. 81 at 5-6, 9-10); (2) the Gotham Excess Policy is only triggered on full and complete exhaustion of the $10 million general aggregate limit of the primary policy (*id.* at 6-7); and (3) Sigma accepted the Gotham Excess Policy -- and paid the premium for the insurance unambiguously provided therein -- after its broker, CalSurance, reviewed and approved the policy (*id.* at 7).

The California Court of Appeal considered the same claims and allegations in *Rios v. Scottsdale Ins. Co.*, 119 Cal.App.4th 1020 (2004). In *Rios*, the owner of a jewelry store (Rios) contacted her agent (Whilt) to obtain insurance coverage for her jewelry store. Whilt solicited a quote from a surplus lines broker (UCA) and submitted an application that requested a quote for "special" business and personal property coverage. *Id.* at 1023-24. UCA could not quote special form coverage

because Rios's building had not been upgraded. UCA did, however, provide a quote for "basic" broad form coverage, which did not include coverage for theft losses. *Id*. at 1024. Whilt requested that UCA bind and issue the quoted coverage (basic, not special form coverage), and Scottsdale issued the policy to Rios without theft coverage. *Id*. Rios erroneously believed she had theft coverage. *Id*. Her jewelry store was burglarized during the policy period and Scottsdale denied coverage because the basic policy did not include insurance for theft losses. *Id*.

The trial court granted Scottsdale's motion for summary judgment on the coverage claims because, as here, the policy unambiguously excluded coverage for theft losses. *Id*. at 1025. The trial court also granted Scottsdale's motion for summary judgment on Rios' bad faith claim because, as here, a "bad faith claim cannot be maintained unless policy benefits are due." *Id*. at 1027, *citing Waller*, 11 Cal.4th at 36 and *Love*, 221 Cal.App.3d at 1153. The Court of Appeal affirmed these rulings. The Court of Appeal also affirmed summary judgment for Scottsdale on Rios' fraud and negligent misrepresentation claims for two separate reasons, both of which are applicable here. First, Scottsdale and UCA only dealt with Whilt, so the court found that neither UCA nor Scottsdale actually made any representations (or omissions) to Rios. *Id*. at 1028-29. Here, Gotham and ProSight dealt exclusively with Cadence and CalSurance and never had any communications with Sigma during the underwriting or policy issuance processes. Accordingly, neither Gotham nor ProSight can be liable for intentionally misrepresenting the terms of the Gotham Excess Policy to Sigma. *Rios* noted that where an insured is represented by a competent insurance broker (here, CalSurance), the insurer is "blameless" and cannot be liable for any alleged misrepresentations to the insured. *Id*. at 1029. This is particularly true because the terms of the Gotham Excess Policy are unambiguous. (Dkt. 53.)

Second, and more importantly, Scottsdale and UCA quoted a policy based on "basic" coverage, even though Rios had applied for "special" coverage. The Court

of Appeal rejected Rios' claim that she did not get the insurance for which she had applied. Both the trial court and the appellate court relied on the well-established principle that "[a]n application for insurance is a proposal . . . *[T]he proposal is not a completed contract until it is accepted by the insurer in the same terms in which the offer was made. If the acceptance modifies or alters any of the terms of the proposal, it must then in turn be accepted by the applicant to be effective as a contract*." *Id*. at 1029 (emphasis added). In this case, and in response to CalSurance's request for a quote, Gotham quoted excess insurance in June 2012 that is unambiguously triggered only by exhaustion of the $10 million general aggregate limit of the primary policy. (*See* Dkt. 35-3.) The premium indication for the insurance that Gotham was willing to issue clearly stated that the "Coverage Offered" would be issued on the terms of "Policy Form BD POL Form 2011_02_04," attached a copy of those terms -- which are the same unambiguous terms that Sigma eventually purchased -- and stated that the "Limit of Liability Offered" was "$5,000,000 [excess of] $10,000,000 Arch limit[.]" (Dkt. 35-3 at 3-7.)

Thus, even assuming that Sigma purchased different insurance than it now claims to have wanted, the terms of the Gotham Excess Policy -- which, as discussed above, were plain contract terms known by Sigma and its broker for months before the policy was issued and accepted -- constituted a counteroffer as a matter of law, not an error, and Sigma accepted that counteroffer when it paid for and agreed to be bound by the Gotham Excess Policy. *Rios*, 119 Cal.App.4th at 1029. Accordingly, under *Rios*, Gotham and/or ProSight made a counteroffer, not an error or misrepresentation as to coverage, and, thus, cannot be liable for fraud or negligence.

**E. Sigma's Vicarious Liability Claim Fails As Against Gotham And ProSight**

Sigma's fourth claim -- insofar as one paragraph of that claim attempts to

assert a vicarious liability claim against Gotham and ProSight -- is either the product of imprecise pleading or simply reflects the fact that there is no validity to the claim. (Dkt. 81 at 17.)

First, in trying to morph its professional negligence cause of action against the other defendants (*cf.* Dkt. 1 at 17-18) into a claim against Gotham and ProSight, Sigma simply added the latter two entities to the title of the claim (*see* Dkt. 81 at 17:3) and added one new conclusory allegation -- that Cadence and CalSurance were both "agents" of Gotham and ProSight (*id.* at 18:5-9) and that Gotham and ProSight are therefore vicariously liable for their purported negligence. That new allegation is, at best, a formulaic legal conclusion that must be disregarded for purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. at 678. As a result, there are no remaining allegations to support Sigma's vicarious liability claim. Most notably, Sigma has failed to allege (likely because it is untrue) that either Cadence or CalSurance had any authority to bind Gotham to obligations beyond or different than the unambiguous terms, conditions and exclusions that ***Gotham*** offered and eventually issued to Sigma in the form of a written contract that Sigma accepted. *Van't Rood v. Cty. of Santa Clara*, 113 Cal.App.4th 549, 572 (2003) (a party who works with another is not necessarily the other's agent and "[c]ontrol may not be inferred merely from the fact that one person's act benefits another"). Because there are no factual allegations to support its vicarious liability claim, Sigma's fourth claim falls short of the basic pleading requirements set forth in Rule 8(a)(2) and, therefore, must be dismissed pursuant to Rule 12(b)(6).

Second, Sigma's allegations just do not make sense. In fact, the first substantive allegation in Sigma's fourth claim is that both CalSurance and Cadence were ***Sigma's*** agents with respect to procuring insurance coverage that would be excess to the Primary Arch Policy. (Dkt. 81 at 17.) This was not a mistake; Sigma also alleged that such a relationship existed (with respect to CalSurance) in the first several pages of its amended complaint. (*Id.* at 3.) So who is the principal and who

is the agent? If Sigma's allegations are assumed to be true, CalSurance and Cadence were both agents of Sigma, Gotham *and* ProSight. This makes no sense and the Court need not indulge such reckless factual assertions. *Kee v. Mersch*, 297 F. App'x at 617. Indeed, if the allegations are assumed to be true, **Sigma** is actually vicariously liable (as a principal) for CalSurance's and Cadence's alleged negligence, which purportedly arose in connection with "procuring coverage excess to the [primary] Arch Policy[.]" (Dkt. 81 at 17.) Given the ambiguity and impossibility of Sigma's claim, Gotham and ProSight cannot be expected to respond.

Third, this is not a negligence case. At its heart, this is a contract case, which is how it was styled before the Court agreed that the contract clearly said what Sigma did not want it to say. (*See, e.g.*, Dkt. 81 at 3 (claiming that this is an "insurance coverage" action), 18 (seeking damages on the negligence / vicarious liability claim for legal fees that Sigma "has incurred and will continue to incur . . . to obtain from Gotham the policy benefits to which [Sigma is] entitled").) Sigma purchased unambiguous insurance policies and is now complaining that it had to spend its money for losses that were plainly not covered by its insurance contract. Sometimes, parties just have to accept responsibility for their decisions and their agreements. Sigma's discontent with the insurance that it decided to purchase -- and for which it paid -- does not, by itself, make this a coverage dispute (the Court has already found that Sigma is not entitled to any coverage under the plain terms of its policy) or a negligence or fraud case (the terms of the Gotham Excess Policy are unambiguous, were in Sigma's possession and were accepted and retained for years).

## IV. CONCLUSION

Despite its desperation in trying to keep Gotham in this case, there simply is no merit to any of Sigma's new claims or theories against Gotham or ProSight and all of those claims (bad faith, fraud, negligence and professional negligence) should

be dismissed as a matter of law. Fed. R. Civ. P. 12(b)(6). The Court has already found as a matter of law that the Gotham Excess Policy clearly does not afford insurance for the underlying FINRA claims against Sigma until the primary policy has paid out at least $10 million. The Court should not allow Sigma to continue to try to recover policy benefits where none are due under theories that have no basis in law or fact. This is particularly true because Sigma has already suggested that it will appeal the Court's prior determination as to the plain meaning of the Gotham Excess Policy. (*See* Dkt. 81 at 12-13 (where Sigma "expressly preserve[d] all appellate rights with respect to the Court's order granting partial summary judgment in Gotham's favor and denying Sigma's motion for partial summary judgment").) Because the claims in Sigma's amended complaint fail as a matter of law and because Sigma obviously intends to pursue its insurance contract claims on appeal, the Court should dismiss Sigma's second amended complaint against Gotham and ProSight with prejudice and allow this mater to be finally resolved in the Ninth Circuit.

Dated: September 28, 2016

HOGAN LOVELLS US LLP

*Mark C. Goodman*
Mark C. Goodman
Attorneys for Defendant and Counter/Cross-Claimant GOTHAM INSURANCE COMPANY and Specially Appearing Defendant PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC.