Mark C. Goodman (Bar No. 154692)
Brandon P. Rainey (Bar No. 272341)
HOGAN LOVELLS US LLP
3 Embarcadero Center, 15th Floor
San Francisco, California  94111
Telephone:   (415) 374-2300
Facsimile:    (415) 374-2499
Email:  mark.goodman@hoganlovells.com
Email:  brandon.rainey@hoganlovells.com

Attorneys for Defendant and Counter/Cross-
Claimant GOTHAM INSURANCE
COMPANY and Specially Appearing
Defendant PROSIGHT SPECIALTY
MANAGEMENT COMPANY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SIGMA FINANCIAL CORPORATION, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>GOTHAM INSURANCE COMPANY, a New York corporation; BROWN & BROWN PROGRAM INSURANCE SERVICES, INC., D/B/A CALSURANCE ASSOCIATES, a California Corporation; CADENCE INSURANCE BROKERS, INC., a Tennessee corporation, PROSIGHT SPECIALTY MANAGEMENT COMPANY, INC., a New York corporation<br><br>Defendants.<br><br>AND RELATED CROSS-CLAIM | Case No. 8:15-cv-1531-AG-DFM<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**[Fed. R. Civ. P. 9(b), 12(b)(6)]**<br><br>Date:      October 31, 2016<br>Time:     10:00 a.m.<br>Judge:    Hon. Andrew Guilford<br>Place:    Courtroom 10D<br>              411 West Fourth Street<br>              Santa Ana, CA 92701 |

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

\\040296/000027 - 1713183 v1

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II.  DISCUSSION............................................................................................ 2

   A.  Bad Faith Cannot Exist Without A Deprivation Of Policy Benefits .... 2

   B.  Sigma Was Not Defrauded By Clear Contract Terms ........................ 5

   C.  Even If The Contract Differed From What Was Requested On
       Sigma's Application, Sigma Accepted The Policy As Written ........... 7

   D.  Sigma's Vicarious Liability Claim Is Improper................................. 8

III.  CONCLUSION ........................................................................................10

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

\\040296/000027 - 1713183 v1

i

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................8

*Bodenhamer v. Superior Court*,
  192 Cal.App.3d 1472 (1987) ....................................................................4

*Butcher v. Truck Ins. Exch.*,
  77 Cal.App.4th 1442 (2000) .....................................................................6

*Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*,
  2 Cal. 4th 342 (1992) ...............................................................................4

*Gemini Ins. Co. v. W. Marine Ins. Servs. Corp.*,
  2016 WL 3418413 (E.D. Cal. June 22, 2016) ................................... 1, 6

*Guerard v. CNA Fin. Corp.*,
  2009 WL 3152055 (N.D. Cal. Sept. 23, 2009) ........................................7

*Judah v. State Farm Fire & Cas. Co.*,
  227 Cal. App. 3d 1133, 266 Cal. Rptr. 455, *review granted and
  opinion superseded*, 789 P.2d 341 (Cal. 1990) ................................. 3, 4

*Love v. Fire Ins. Exch.*,
  221 Cal.App.3d 1136 (1990) ....................................................................3

*Murray v. State Farm Fire & Cas. Co.*,
  219 Cal. App. 3d 58 (1990) .....................................................................3

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*,
  2011 WL 4501945 (C.D. Cal. Sept. 28, 2011) .......................................7

*Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*,
  2008 WL 4616796 (S.D. Cal. Aug. 1, 2008) .................................. 1, 5, 6

*Raulet v. Northwestern Nat'l Ins. Co.*,
  157 Cal. 213 (1910) ............................................................................ 5, 6

*Rios v. Scottsdale Ins. Co.*,
  119 Cal.App.4th 1020 (2004) ............................................................. 2, 7

Hogan Lovells US LLP
Attorneys At Law
San Francisco

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

\\040296/000027 - 1713183 v1

*Travelers Ins. Co. v. Lesher*,
    187 Cal.App.3d 169 (1986).................................................................4

*Waller v. Truck Ins. Exch., Inc.*,
    11 Cal.4th 1 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) ...............1, 3

**Statutes**

Civil Code § 2330 .............................................................................2, 8, 9, 10

Civil Code § 2339 ...................................................................................2, 8, 9

**Other Authorities**

CACI 3709 ...........................................................................................10

Cal. Rule of Ct. 8.1105(e) ........................................................................4

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

iii

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

\\040296/000027 - 1713183 v1

## I.      INTRODUCTION

The Court recently characterized its decision to allow Sigma to assert new claims against Gotham and ProSight in this litigation as "very generous."  Despite that latitude, Sigma has chosen to bring claims based on non-existent facts or law that does not apply to the facts that do exist.

For instance, Sigma tries to bring an insurance bad faith claim against Gotham despite the fact that the Court has expressly found that no insurance contract benefits are owed by Gotham to Sigma as a matter of law.  While Sigma argues that its bad faith claim can survive "independent of the contract" (Dkt. 85 at 2), that is simply not correct under California law.  In fact, it is well settled in California that a bad faith claim must arise out of a breach of the insurance contract and no such claim can lie where no policy benefits have been withheld.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 35-36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (an insurer cannot be liable for bad faith where no "policy benefits," not just insurance coverage, are due).

Sigma also argues that fraud and negligence claims are proper despite the plain and unambiguous terms of the insurance contract that it purchased because it should not be charged with knowledge of those terms.  However, the legal principle on which Sigma purports to rely to make this argument applies only to unrepresented, lay, individual insurance purchasers and -- even then -- only under unique circumstances.  *Gemini Ins. Co. v. W. Marine Ins. Servs. Corp.*, 2016 WL 3418413, at *10 (E.D. Cal. June 22, 2016); *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 4616796, at *3 (S.D. Cal. Aug. 1, 2008).  Here, the factors required to deviate from the general rule do not exist.  Sigma is not even close to a lay insured but is a sophisticated financial services firm with billions of dollars under management that was represented by an experienced and sophisticated insurance broker in the negotiation and purchase of the Gotham Excess Policy.  Sigma and CalSurance are not entities that the law permits -- under

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

\\040296/000027 - 1713183 v1

1

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

narrow circumstances not present here -- to claim ignorance of contract terms. Instead, Sigma is charged with knowing and understanding clear contract terms like those at issue in this case.

Sigma then ignores law that says that -- even if the Gotham Excess Policy does not provide the coverage for which Sigma applied -- there was no completed contract between the parties (again, with Sigma being represented by an experienced broker) until Sigma accepted the contract. *Rios v. Scottsdale Ins. Co.*, 119 Cal.App.4th 1020 (2004). It is the terms of the agreement that Sigma accepted and for which it paid that are the terms of the contract between the parties. The fact is, *Rios* is dispositive of Sigma's fraud and negligence claims. *See id.* at 1029.

Finally, Sigma argues that Gotham and ProSight are vicariously liable for the professional negligence of defendants Cadence and CalSurance. But that claim is undercut by the most fundamental rule of agency law: A principal is only vicariously liable for acts that were within the scope of an agent's authority. Civil Code §§ 2330, 2339. Here, CalSurance was never Gotham's or ProSight's agent and Sigma does not deny that fact in its Opposition. While Sigma does allege an agency agreement between ProSight and Cadence (Dkt. 37-2), that contract *specifically* prohibits Cadence from binding Gotham to contract terms that are different than the terms that Gotham has offered. Whether Cadence and CalSurance are liable to Sigma for professional negligence is irrelevant to whether any claims can be maintained against Gotham or ProSight. The critical fact is that, even assuming the truth of Sigma's allegations, neither Gotham nor ProSight can be vicariously liable for the alleged negligence of either broker as a matter of law.

## II.   DISCUSSION

### A.   Bad Faith Cannot Exist Without A Deprivation Of Policy Benefits

In trying to maintain its insurance bad faith claim in this action, Sigma adopts the "ostrich defense" strategy and simply refuses to acknowledge the well-established rule that an insurer cannot be liable for bad faith where no "policy

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

\\040296/000027 - 1713183 v1

2

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

benefits" are due.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th at 35-36; *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151-53 (1990).  Generally, as here, this rule arises in the context of a coverage dispute.  However, given the resolution of Sigma's coverage claims on summary judgment, Sigma is now attempting to morph the concept of "policy benefits" into a term that means "insurance coverage benefits."  There is no such rule of law.  All of the cases that Sigma cites to support this argument are pre-*Waller* lower court decisions that find that, in rare and "unusual circumstances," a carrier may be liable in tort "despite the fact that [an] insurance contract [does] not provide for coverage" ***but the carrier nevertheless breaches the contract in some other regard***.  *Murray v. State Farm Fire & Cas. Co.*, 219 Cal. App. 3d 58, 65-66 (1990).  In fact, if Sigma had actually read the cases on which it relies, it would have realized that they actually underscore the lack of merit to its bad faith claim.  (*See* Dkt. 85 at 10.)

For example, in *Murray*, *supra*, even though there was no coverage under the policy at issue, the policyholder ***could not*** maintain a bad faith claim based on an argument that the carrier had breached its obligation to conduct an investigation before denying coverage.  219 Cal.App.3d at 65-66.  The court there held that "the fact that the investigation yielded a correct conclusion precludes any claim that the [alleged] inadequacy caused any damage."  *Id*.  Thus, the actual holding of *Murray* does not help Sigma at all.  In any event, unlike *Murray*, Sigma has not alleged that Gotham or ProSight failed to investigate.  Indeed, all of Sigma's allegations about ProSight and Gotham relate to conduct that is extrinsic to obligations under the Gotham Excess Policy.  Such allegations cannot support a bad faith claim.  The unambiguous terms of the policy control the parties' rights and obligations and, in the absence of any allegation that Sigma was deprived of its "policy benefits" under that contract, a bad faith claim cannot exist as a matter of law.

In *Judah v. State Farm Fire & Cas. Co.*, 227 Cal. App. 3d 1133, 266 Cal. Rptr. 455, *review granted and opinion superseded*, 789 P.2d 341 (Cal. 1990) -- a

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO

\\040296/000027 - 1713183 v1

3

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

de-published and improperly cited decision with no precedential value whatsoever (*see* Cal. Rule of Ct. 8.1105(e)) -- the court held that, even though there was no coverage under the policy at issue, the insurer had assumed the policyholder's defense under that policy and then failed to "conduct that defense with the same duty of care as if there were no coverage dispute." *Judah*, *supra*, 266 Cal.Rptr. at 464 (citation to the California Reporter required given de-publication of the decision); *see also Travelers Ins. Co. v. Lesher*, 187 Cal.App.3d 169 (1986) (also cited by Sigma and involving a similar failure-to-adequately-defend claim).[1] Here, there are no facts or allegations that Gotham defended a claim but did so inadequately. Instead, Gotham has continuously taken the position that it has no defense obligation whatsoever unless and until the primary policy pays at least $10 million in covered claims, a position with which this Court has agreed. The Court need only look at Sigma's second amended complaint to confirm this fact, as that pleading does not allege that Gotham and/or ProSight had or assumed any obligation under the policy and then failed to discharge it with appropriate care.

According to the operative pleading in this case, Sigma's bad faith claim is apparently now based on an allegation that Sigma purchased less insurance than it wanted. That allegation is simply not a claim that Gotham or ProSight deprived Sigma of any benefits under the contract that was issued. The Court gave Sigma a chance to bring new contract-based claims but it is now clear that Sigma cannot do so without violating Rule 11. (*See* Dkt. 68 at 4 (declining to rule on Gotham's

---

[1]     The other cases cited by Sigma are likewise unavailing. *See Bodenhamer v. Superior Court*, 192 Cal.App.3d 1472, 1479 (1987) (where the insured alleged that the insurer "intentionally misrepresented its own assessment of the validity of customer claims, delayed settlement of those claims in bad faith, and caused injury to the good will" of the insured); *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992) (a non-insurance case that Sigma quoted and then misrepresented by ignoring the footnoted portion of its quoted language: "This assumes of course we are dealing with breach of the covenant of good faith in the traditional contract sense and not as a tort. [Citation omitted.] As a tort, a separate breach of the covenant of good faith and fair dealing would introduce the possibility of tort remedies and even punitive damages. However, no claim has been made here of a tortious breach").

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

\\040296/000027 - 1713183 v1

4

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

1    motion for summary judgment on the bad faith claim until Sigma's new predicate

2    claims had been filed).)  There is no support for Sigma's assertion that a bad faith

3    claim can exist "independent of the contract" (Dkt. 85 at 2) and, respectfully, it

4    would be reversible error for the Court to adopt this incorrect interpretation of

5    California law.  Therefore, the bad faith claim must be dismissed with prejudice.

6              **B.    Sigma Was Not Defrauded By Clear Contract Terms**

7              The gist of Sigma's new claim for fraud is that Gotham and ProSight

8    concealed the unambiguous terms of the Gotham Excess Policy because *Sigma*

9    (and its broker) failed to read or appreciate the premium indication (which

10   expressly set forth the "coverage offered" by Gotham) and the policy itself (the

11   terms of which this Court has deemed unambiguous).  The argument that Sigma

12   makes to support this fraud claim contradict California law and the Court's

13   previous ruling on Sigma's coverage claims.

14             Sigma principally relies on *Raulet v. Northwestern Nat'l Ins. Co.*, 157 Cal.

15   213, 230 (1910), which, on average, is only cited once every two years and

16   recognizes that *lay insureds* may not be aware of all of the fine print in long,

17   complicated insurance policies that are prepared by experienced insurance

18   professionals without any input from the policyholder.  While Gotham does not

19   dispute that, under certain circumstances, courts may relax the rule that insureds are

20   absolutely bound by the terms of their insurance contracts, *Raulet* has no bearing on

21   this case because it does not involve an unsophisticated insured or a complicated

22   insurance contract.  Indeed, the proper analysis focuses entirely on the contract

23   language in question and whether the insured in question should be expected to

24   understand it.  In *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008

25   WL 4616796, at *3, the Southern District considered a "reasonable reliance" claim

26   like Sigma's and found that *Raulet* was inapplicable because the material terms

27   "were in short documents easily intelligible to [the] plaintiffs, who were reasonably

28   sophisticated businesspeople."  *Id.*  Several months ago, the Eastern District agreed

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

\\040296/000027 - 1713183 v1

with *Omni* and held that *Raulet* only "addresses the case of an individual lay consumer and not a business entity or an expert well versed in insurance policies." *Gemini Ins. Co. v. W. Marine Ins. Servs. Corp.*, 2016 WL 3418413, at *10. *Gemini* specifically held that any *Raulet*-type of relief is unavailable where the contracts at issue are purchased through an insured's broker because those circumstances "cannot reasonably be compared to a lay policyholder without knowledge of how an insurance policy works." *Id.*[2]

Obviously, this case is in line with *Omni* and *Gemini*, not *Raulet*. For one thing, this is not a "fine print" type of case. Tellingly, Sigma is not claiming that the policy language is hidden or complicated and that it could not have understood the language at issue if it has simply read the contract. The truth is, the trigger and limits are typically the most important provisions in an excess insurance policy so they are provisions that Sigma should have immediately read and the Court has already held that the Gotham Excess Policy prominently, clearly and unambiguously provides excess insurance over the $10 million general aggregate limit of the underlying primary policy. (Dkt. 53.) Moreover, the Gotham Excess Policy is a follow-form policy that is a relatively short contract because the coverage provisions are set forth in and controlled by the primary policy. (*See* Dkt. 81-5.) For another thing, Sigma cannot argue that it is comparable to a non-corporate, unrepresented, lay insurance purchaser. Sigma is a "huge" investment and financial services firm with nearly 700 registered representatives, billions of dollars of assets under management and more than $50 million of annual revenue (*see* Dkt. 81-3) and it was represented by an experienced, sophisticated insurance broker (CalSurance) in connection with its purchase of the Gotham Excess Policy.

---

[2]     Sigma also relies on *Butcher v. Truck Ins. Exch.*, 77 Cal.App.4th 1442, 1464 (2000) to support its argument that an alleged "disparity in knowledge may impose an affirmative duty of disclosure on the insurer or its agent." (Dkt. 85 at 15.) *Butcher* also involved a lay insured that was not represented by an insurance broker and, therefore, has no application here in light of *Omni* and *Gemini*.

Hogan Lovells US
LLP
Attorneys At Law
San Francisco

6

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

\\040296/000027 - 1713183 v1

While Sigma would have loved to have the Court ignore the language of the insurance policy at issue here, it did not do so and Sigma is forced to argue that it did not know what it had agreed to because it did not read its policy.  This argument is, with all respect due, ridiculous where a clear and unambiguous contract was provided to Sigma and to its broker, was in their possession at all relevant times and is the same version of the contract to which Sigma agreed when t paid its premium. Under the law, Gotham and ProSight cannot be liable for fraud because (1) no material terms of the excess insurance policy that Gotham offered to Sigma (*see* Dkt. 35-3) and that Sigma subsequently purchased (*see* Dkt. 81-5) were concealed, (2) it is undisputed that the unambiguous terms of the coverage offered and purchased by Sigma were disclosed to Sigma and its sophisticated agent, CalSurance, and, (3) without any concealment or fraudulent intent, the reasonable reliance element of Sigma's fraud claim cannot exist.  *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 2011 WL 4501945, at *4 (C.D. Cal. Sept. 28, 2011); *Guerard v. CNA Fin. Corp.*, 2009 WL 3152055 at *5 (N.D. Cal. Sept. 23, 2009). Accordingly, Sigma's fraud claim must be dismissed with prejudice.

### C.    Even If The Contract Differed From What Was Requested On Sigma's Application, Sigma Accepted The Policy As Written

For obvious reasons, Sigma almost completely ignored the bold and italicized portion of the motion to dismiss concerning hornbook offer and acceptance principles in the insurance context.  (*See* Dkt. 79-1 at 11.)  In fact, the only response Sigma offered to that dispositive argument was one sentence: "Gotham's assertion that it made a 'counteroffer' by issuing a policy other than that requested by Sigma . . . is without merit."  (Dkt. 85 at 18.)  There is no explanation or support in Sigma's Opposition for this "argument."  Suffice it to say, *Rios v. Scottsdale Ins. Co.*, 119 Cal.App.4th 1020 (2004) is directly on point and, for the reasons discussed at length in the motion to dismiss (*see* Dkt. 79-1 at 9-11), requires the dismissing Sigma's fraud and negligence claims.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO
\\040296/000027 - 1713183 v1

7

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

### D.     Sigma's Vicarious Liability Claim Is Improper

Sigma argues that Cadence and CalSurance were the agents of everyone else that Sigma wants to be part of this litigation (Gotham, ProSight and Sigma) such that, for some unexplained reason, Gotham and ProSight are vicariously liable to Sigma for the alleged negligence of CalSurance and Cadence.  This legal conclusion (*i.e.*, that Cadence and CalSurance were "agents" of Gotham and ProSight) must be disregarded on a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Even more problematically, Sigma's claim ignores the most fundamental principle of agency law -- that a principal can only be liable for its agent's authorized acts (*see* Civil Code § 2330) -- and, because none of the allegations underlying Sigma's claims against Cadence or CalSurance was authorized by Gotham of ProSight, the claim must be dismissed.

While Sigma baldly alleges that CalSurance was an agent of Gotham and ProSight, this is simply not true.  Sigma tries to gloss over its reckless allegation in its Opposition but the fact is that CalSurance represented Sigma and only Sigma with respect to the Gotham Excess Policy and had neither actual nor ostensible authority to bind Gotham or ProSight in any respect (particularly to insurance coverage that Gotham had not offered or issued to Sigma).  Further eroding Sigma's argument on this issue is the fact that Sigma's primary allegation against CalSurance is that it failed to read the Gotham Excess Policy and deliver the coverage that Sigma purportedly requested.  Holding Gotham vicariously liable for CalSurance's failure to read Sigma's policy would only lead to an absurd result (is Sigma really claiming that Gotham did not read the policy?).  Accordingly, neither Gotham nor ProSight can be vicariously liable for CalSurance's alleged negligence. Civil Code §§ 2330, 2339.

With respect to Cadence, Sigma relies on the ProSight/Cadence agency agreement, arguing that it "was before the Court" previously and is undisputed. (Dkt. 85 at 17.)  Gotham does not dispute that there was an agency agreement with

Hogan Lovells US LLP
Attorneys At Law
San Francisco

\\040296/000027 - 1713183 v1

8

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

Cadence (unlike CalSurance).  But Sigma ignores the fact that the agency agreement to which it points specifies the scope of Cadence's agency:  Cadence may "procure . . . applications for insurance policies to be issued by [ProSight] . . . through Gotham Insurance Company[,]" "receive applications for insurance risks [Cadence is] licensed to solicit, and submit them to [ProSight] for approval" and "deliver policies that [ProSight] may issue."  (Dkt. 37-2 at 2.)  The agency agreement *expressly prohibits* Cadence from "exceed[ing] the scope of [its] authority" and from "alter[ing] or chang[ing] any provision of any policy" that Gotham may issue through ProSight.  (*Id*. at 3.)  Simply stated, Cadence was only authorized to accept applications for insurance and then issue the policies that ProSight and Gotham were willing to offer on the terms that ProSight and Gotham were willing to offer.  *See* Civil Code § 2330.  Gotham offered such a policy and Sigma accepted it.  It is that insurance policy that this Court has already ruled clearly owes no obligation to Sigma.

Even if Cadence thought that the Gotham Excess Policy provided different insurance than was unambiguously set forth in the premium indication and in the policy itself, and even if Cadence's comment on the July 18, 2012 memorandum contradicted the Gotham Excess Policy (a point that Gotham and ProSight vigorously dispute), neither Gotham nor ProSight could be liable for Cadence's alleged mistake because it would be outside the scope of Cadence's agency.  An agent only represents its principal with respect to acts within the scope of its actual or ostensible authority.  Civil Code §§ 2330, 2339.  Here, Sigma does not and cannot dispute that Cadence had no "actual" authority for Cadence's representations (had it made any) regarding coverage under the Gotham Excess Policy (Dkt. 37-2), so Sigma's agency claim cannot survive on that theory, either.  "Ostensible" authority, on the other hand, requires a direct statement or suggestion *from ProSight or Gotham* to Sigma that led Sigma to believe that Cadence could offer, change, alter or even interpret the terms of the insurance that Gotham had

Hogan Lovells US LLP
Attorneys At Law
San Francisco

9

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM

\\040296/000027 - 1713183 v1

offered to Sigma.  Civil Code § 2330; CACI 3709.  No such allegations have been made in this case (Dkt. 81).  In any event, Sigma's claim cannot survive because if Sigma had made any allegations to that effect it would have violated Rule 11. Therefore, although Cadence may or may not be liable to Sigma (time will tell), Gotham and ProSight certainly cannot be held vicariously liable for Cadence's alleged misconduct because it could not be within the scope of Cadence's agency.

## III.   CONCLUSION

The Court has generously provided several lifelines to Sigma since this case was filed in September 2015.  The new claims and theories in Sigma's latest pleading -- brought only after the Court awarded summary judgment against Sigma on virtually all of its other claims -- are no more meritorious than its original coverage claims (otherwise they would have been filed over a year ago).  Because there are no policy benefits due under the Gotham Excess Policy, because there was no fraud or negligence as a matter of law (at least by Gotham or ProSight) and because neither Gotham nor ProSight can be held vicariously liable for the actions of CalSurance (at all) or Cadence (under the facts alleged in this case), Sigma's claims against Gotham and ProSight should be dismissed with prejudice.

Dated: October 17, 2016             HOGAN LOVELLS US LLP

                                    /s/ Mark C. Goodman
                                    Mark C. Goodman
                                    Attorneys for Defendant and
                                    Counter/Cross-Claimant GOTHAM
                                    INSURANCE COMPANY and
                                    Specially Appearing Defendant
                                    PROSIGHT SPECIALTY
                                    MANAGEMENT COMPANY, INC.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
SAN FRANCISCO
\\040296/000027 - 1713183 v1

10

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 8:15-CV-1531-AG-DFM